797 F.2d 1197
 55 USLW 2114, Fed. Sec. L. Rep. P 92,892,
RICO Bus.Disp.Guide 6337
 Estelle JACOBSON and Cynthia Carson, Appellants in Nos.
85-3311 and 85-3343,
v.
MERRILL LYNCH, PIERCE, FENNER & SMITH, INC. and Robert M.
Kolaczynski, Appellants in No. 85-3282.
Marilyn E. BURRIS,
v.
PAINE, WEBBER, JACKSON AND CURTIS, INC., Smith Barney,
Harris Upham & Co., Inc., and Donald J. Porter,
Appeal of SMITH BARNEY, HARRIS UPHAM & CO., INC.
Ellis GANT,
v.
KIDDER, PEABODY & CO., INC. and Frank E. Gatta, Jr., Jointly
and Severally.
Appeal of KIDDER, PEABODY & CO., INC.
Herbert BLUMENTHAL,
v.
DEAN WITTER REYNOLDS INC. and Daniel J. Turov.
Appeal of DEAN WITTER REYNOLDS INC.
Michael ERLBAUM,
v.
PRUDENTIAL-BACHE SECURITIES, INC. and Samuel Alan Liebman, Appellants.
 Nos. 85-3282, 85-3311, 85-3343, 85-5517, 85-5542, 85-5439,
85-5552, 85-1541.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit Rule 12(6)
in Nos. 85-5517, 85-5542, 85-5439,
85- 5552 and 85-1541 April 14, 1986.
 Argued in Nos. 85-3282, 85-3311 and
85-3343 April 17, 1986.
 Decided Aug. 11, 1986.
Rehearing and Rehearing In Banc in No. 85-5439 Denied Sept. 8, 1986.
 
 Stirling Lathrop (argued), Greenfield & Chimicles, Haverford, Pa., John R. McGinley, Jr., Jeffrey Reed, Grogan, Graffam, McGinley, Solomon & Lucchino, Pittsburgh, Pa., for Estelle Jacobson and Cynthia Carson.
 Richard C. Lane, Marten R. Jenkins (argued), Campbell, Sherrard & Burke, P.C., Pittsburgh, Pa., for Merrill Lynch, Pierce, Fenner & Smith, Inc.
 Foster S. Goldman, Jr., Berkman, Ruslander, Pohl, Lieber & Engel, Pittsburgh, Pa., for Robert M. Kolaczynski.
 William J. Fitzpatrick, New York City, for amicus curiae Securities Industry Ass'n, Inc.
 Dennis A. Durkin, Thomas E. Durkin, Jr., Newark, N.J., for Marilyn Burris.
 Sheldon M. Finkelstein, Joseph J. Fleischman, Hannoch Weisman, Roseland, N.J., for Paine Webber, Jackson & Curtis, Inc., and Donald J. Porter.
 Janvey & Berglas, New York City, Matthew Farley, Shanley & Fisher, P.C., Morristown, N.J., Edward Turan, Linda R. Feinstein, New York City, for Smith Barney, Harris Upham & Co., Inc.
 Kenneth K. Lehn, Perry Feinberg, Ellenport & Holsinger, P.A., Roseland, N.J., for Ellis Gant.
 Matthew Farley, Florence M. Peterson, Shanley & Fisher, P.C., Morristown, N.J., for Kidder, Peabody & Co. Inc.
 Alan Mansfield, Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for Herbert Blumenthal.
 John V. McCambley, Wyckoff, N.J., for Dean Witter Reynolds Inc.
 Allan D. Windt, Spector, Cohen, Gadon & Rosen, Philadelphia, Pa., for Michael Erlbaum.
 Harold E. Kohn, Joseph C. Kohn, Kohn, Savett, Marion & Graf, P.C., Philadelphia, Pa., for Prudential-Bache Securities, Inc. and Samuel Alan Liebman.
 Before ADAMS, GIBBONS, and MANSMANN, Circuit Judges.
 OPINION OF THE COURT
 GIBBONS, Circuit Judge:
 
 
 1
 This opinion deals with five interlocutory appeals presenting similar legal issues. All five appeals present the issue whether subsequent decisions of the United States Supreme Court have overruled this court's holding in Ayers v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 538 F.2d 532 (3d Cir.), cert. denied, 429 U.S. 1010, 97 S.Ct. 542, 50 L.Ed.2d 619 (1976), that claims against brokerage firms for violation of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78j(b) (1982), are not arbitrable. Two of the five appeals present the additional issue whether claims arising under sections 1962(a) and 1962(c) of the Racketeer Influenced and Corrupt Organization Act (RICO), 18 U.S.C. Sec. 1962(a), (c) (1982), are arbitrable. Both these appeals present the issue whether a RICO claim is arbitrable when the predicate offenses on which it is based are section 10(b) violations. One of the appeals also presents the issue whether RICO claims are arbitrable when the predicate offenses are mail and wire fraud.
 
 
 2
 All the appeals are properly before us.[1] We affirm the orders denying the brokerage firms' motions to compel arbitration of the section 10(b) claims. We reverse the portion of the order in Jacobson v. Merrill Lynch, Pierce, Fenner & Smith, Inc., Nos. 85-3282, 85-3311, and 85-3343, compelling arbitration of the RICO claim that was based on violations of section 10(b). We also reverse the portion of the order in Blumenthal v. Dean Witter Reynolds, Inc., No. 85-5552, denying the motion to compel arbitration of RICO claims that are based on predicate acts of mail and wire fraud but affirm the portion of the order denying arbitration of a RICO claim based on section 10(b) violations.[2]I.
 
 
 3
 All the plaintiffs were customers with trading accounts at brokerage firms, and all executed agreements in which they consented to arbitrate all controversies arising out of transaction affecting their accounts. Typical of these agreements is the standard Customer Agreement used by Merrill Lynch, Pierce, Fenner & Smith, Inc. which provides,
 
 
 4
 It is agreed that any controversy between us arising out of your business or this agreement shall be submitted to arbitration conducted under the provisions of the Constitution and Rules of the Board of Governors of the New York Stock Exchange, Inc. or pursuant to the Code of Arbitration of the National Association of Securities Dealers, Inc., as the undersigned may elect.... Arbitration must be commenced by service upon the other of a written demand for arbitration or a written notice of intention to arbitrate, therein electing the arbitration tribunal. In the event the undersigned [customer] does not make such a designation within five (5) days of such demand or notice, then the undersigned [customer] authorizes you to do so on behalf of the undersigned [customer].
 
 
 5
 Joint Appendix (Jacobson v. Merrill Lynch ) at 292. All the plaintiffs incurred losses in investment accounts covered by similar arbitration agreements, and all the plaintiffs instituted suits claiming that those losses resulted from violations of federal securities laws, state statutory and common laws, and various securities-industry rules. In all five cases the district courts on the authority of Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), granted motions to compel arbitration of the state-law claims. No appeal challenges those orders. In Blumenthal, No. 85-5552, the district court refused to order arbitration of the RICO claim, while in Jacobson, Nos. 85-3282, 85-3311, and 85-3343, the district court ordered arbitration of the RICO claim. Claims predicated upon securities-industry rules[3] have been dismissed and are not before us. Before considering the substantive legal issues presented by these appeals, a preliminary question concerning the coverage of the arbitration agreements must be dealt with. In one of the five cases, Gant, No. 85-5439, the plaintiff argues that the broker amended the arbitration agreement to exclude claims arising under federal securities laws. The plaintiff contends, therefore, that because the arbitration agreement does not cover federal securities claims she is free to bring her suit in federal court. The logic of plaintiff's argument, however, is flawed.
 
 
 6
 Effective December 28, 1983 the Securities and Exchange Commission (SEC) promulgated a regulation making it a "fraudulent, manipulative or deceptive act" for a broker "to enter into an agreement with any public customer which purports to bind the customer to the arbitration of future disputes between them arising under the Federal securities laws...." 17 C.F.R. Sec. 240.15c2-2(a) (1985). This regulation goes on to mandate that for agreements entered into prior to December 28, 1983, the broker is required to send a notice "no later than December 31, 1984" informing customers that the arbitration agreements they executed do not cover federal securities laws. Id. at Sec. 240.15c2-2(c).
 
 
 7
 All the arbitration agreements involved in these five appeals were executed prior to December 28, 1983. Consequently, in at least one situation, the broker, Kidder, Peabody & Co., sent a notice informing the plaintiff that the arbitration agreement did not cover federal securities laws claims. In the case in which the plaintiff raises this issue, the notice was not received until after the complained of federal securities laws violations occurred. At best, therefore, the notice acted as an amendment at the time plaintiff's account was next traded following receipt of the notice. Hence, even if the notice constituted an amendment, it does not affect any of the claims before us.
 
 II.
 
 8
 In Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), the Supreme Court, relying on the anti-waiver provision in section 14 of the Securities Act of 1933, 15 U.S.C. Sec. 77n, held that a claim for damages for violation of section 12(2) of that act, 15 U.S.C. Sec. 77l (2), was not subject to contract arbitration. This court, in Ayers v. Merrill Lynch, Pierce, Fenner & Smith, 538 F.2d 532 (3d Cir.1976), applied the Wilko rule to claims for damages for violation of section 10(b) of the Securities and Exchange Act of 1934. Relying on the similar anti-waiver provision in section 29(a) of the 1934 Act, 15 U.S.C. Sec. 78cc(a), and on Congress' acceptance of the view that the Wilko rule applied to claims under the 1934 Act, this court expressly rejected the contention that Scherk v. Alberto Culver Co., 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974) should be read as confining Wilko to claims under the 1933 Act. Ayers, 538 F.2d at 536-37.
 
 
 9
 The Ayers opinion, which is consistent with this court's earlier discussion of the same issue in Moran v. Paine, Webber, Jackson & Curtis, 389 F.2d 242, 245-46 (3d Cir.1968) (dicta),[4] binds this panel unless we can conclude that it has been overruled by subsequent Supreme Court cases. See Internal Operating Procedures of the United States Court of Appeals for the Third Circuit, chapter 8, section C. The brokerage firms rely on two Supreme Court cases that they contend accomplished that result. The first is Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), which held that state law claims pleaded in a federal forum as pendent to claims under section 10(b) are arbitrable. The reasoning of that opinion, according to the brokerage firms, casts doubt upon Ayers. We disagree. In Byrd the Court took note of the line of cases in the lower federal courts applying the Wilko rule to section 10(b) claims and expressly declined to resolve the applicability of Wilko to section 10(b) claims, 470 U.S. at 215-16 n. 1, 105 S.Ct. at 1240 n. 1. In the face of this express disclaimer the opinion cannot fairly be read as casting any doubt upon the continued authority of Ayers as precedent in this circuit.
 
 
 10
 The second case on which the brokerage firms rely is Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., --- U.S. ----, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). Mitsubishi held that an antitrust claim by an automobile dealer against a foreign automobile manufacturer was arbitrable. 105 S.Ct. at 3360-61. The Court in Mitsubishi rejected, as a rule of construction for arbitration agreements, the proposition that such clauses are inapplicable to federal statutory claims unless such claims are mentioned expressly. Id. at 3354-55. The issue presented in Mitsubishi was entirely different from that presented in Ayers and in Wilko. Ayers and Wilko did not involve interpretations of arbitration agreements; rather they involved interpretations of federal statutes that prohibit the application of forum-selection clauses. As Justice Blackmun carefully noted, "it is the congressional intention expressed in some other statute on which the courts must rely to identify any category of claims as to which agreements to arbitrate will be held unenforceable." Mitsubishi Motors, 105 S.Ct. at 3355. The Ayers court identified section 29(a) of the 1934 Act as such a statute, and Mitsubishi does not undercut that statutory interpretation.
 
 
 11
 Because no subsequent Supreme Court decision may fairly be construed to have overruled Ayers, that opinion binds this panel. An extended discussion of the reasons advanced by the brokerage firms concerning why Wilko should not apply to section 10(b) claims is therefore inappropriate. The district courts properly followed the Ayers precedent, and the orders denying motions to compel arbitration of section 10(b) claims will be affirmed in each appeal.
 
 III.
 
 12
 The question whether RICO claims should be subject to arbitration is one of first impression in this court. The question is complicated by the unique structure of the RICO statute, which is aimed at "racketeering" activity, defined in terms of other federal and state statutes. Mitsubishi teaches that exceptions to the general enforceability of arbitration agreements pursuant to the Federal Arbitration Act must be found, if at all, in regulatory statutes. In the case of RICO claims this involves consideration both of the RICO statute and the predicate statutes that it cross-references.
 
 
 13
 Unlike the 1933 and 1934 securities acts, RICO contains no anti-waiver provision. Moreover, the civil remedy for RICO violations has "evolv[ed] into something quite different from the original conception of its enactors." Sedima, S.P.R.L. v. Imrex Co., --- U.S. ----, 105 S.Ct. 3275, 3287, 87 L.Ed.2d 346 (1985). Because the reach of the civil remedy has been achieved largely by the courts, it is not surprising that there is no legislative history suggesting that Congress ever considered whether RICO civil claims should be arbitrated. Despite the absence of a statutory provision that could be construed as a general prohibition against such arbitration, the Court of Appeals for the Second Circuit recently held that RICO claims, for reasons of public policy, are not arbitrable. See McMahon v. Shearson/American Express, Inc., 788 F.2d 94, 98-99 (2d Cir.1986). Presumably the public policy reasons that the McMahon court had in mind included the complexity of most RICO claims, the provision in the statute for recovery of treble damages, and the need for developing the governing law on a case-by-case basis. We believe, however, that the McMahon court paid too little deference to the Supreme Court's decision in Mitsubishi. The Mitsubishi court concluded that "complexity should not suffice to ward off arbitration." 105 S.Ct. at 3357. The antitrust laws are every bit as complex and in need of judicial interpretation as is the RICO statute. The Clayton Act also provides for treble damages, 15 U.S.C. Sec. 15 (1982), yet the Mitsubishi Court held that the availability of this remedy did not require that private antitrust claims be deemed nonarbitrable. 105 S.Ct. at 3359. It would appear therefore that determining statutory claims to be nonarbitrable on the basis of some judicially recognized public policy rather than as a matter of statutory interpretation is no longer permissible.
 
 
 14
 The absence of any RICO statutory provision that would bar arbitration does not, however, resolve both of the appeals presenting RICO claims. Because of the unique structure of the RICO statute, which cross-references other predicate statutes, we must, in making the statutory interpretation required by Wilko and Mitsubishi, look to those statutes as well.
 
 
 15
 The Securities Exchange Act of 1934 contains a statute that has been definitively construed by this court to preclude arbitration of claims for violation of section 10(b). If a sufficient number of section 10(b) violations have taken place to trigger the applicability of RICO, plaintiffs will in most cases plead a RICO claim in order to take advantage of the triple damage remedy that the RICO statute affords. There is no evidence that Congress intended that the availability of RICO remedies for section 10(b) should suspend the operation of the anti-waiver provision of the Securities Exchange Act of 1934. Because the heart of the dispute still will be over whether the securities laws were violated, RICO plaintiffs relying on section 10(b) violations are, by virtue of section 29(a) of the 1934 Act, entitled to a judicial resolution of their RICO claims. Thus we will reverse the order in Jacobson v. Merrill Lynch, Pierce, Fenner & Smith, Inc., Nos. 85-3282, and 85-3345, compelling arbitration of a RICO claim based on section 10(b) predicate acts.
 
 
 16
 We reach a different conclusion in Blumenthal v. Dean Witter Reynolds, Inc., No. 85-5552, in which the complaint pleads RICO claims predicated on violations of the federal mail-fraud statute, 18 U.S.C. Sec. 1341 (1982), and wire-fraud statute, 18 U.S.C. Sec. 1343 (1982), in addition to predicate act violations of section 10(b). See Complaint in Blumenthal at 13-14. The RICO claim based on section 10(b) violations is not subject to arbitration. The RICO claims predicated on mail and wire fraud, however, are arbitrable. No provision of the mail or wire fraud statutes bears any similarity to the anti-waiver provision of the 1933 and 1934 securities acts. The method of analysis required by Wilko and Mitsubishi, therefore, compels a different result. The RICO claims based on mail and wire fraud fall within the arbitration clause as written, and no federal statute prohibits application of the arbitration clause. The motion to compel arbitration of the RICO claims based on mail and wire fraud should have been granted.
 
 CONCLUSION
 
 17
 In Jacobson v. Merrill Lynch, Pierce, Fenner & Smith, Inc., No. 85-3282, 85-3311, and 85-3343, we affirm the order denying the motion to compel arbitration of section 10(b) claims and reverse the order compelling arbitration of the RICO claim. In Erlbaum v. Prudential-Bache Securities, Inc., No. 85-1541, we affirm the order denying the motion to compel arbitration of the section 10(b) claims. In Gant v. Kidder Peabody & Co., No. 85-5439, we affirm the order denying the motion to compel arbitration of the section 10(b) claims. In Blumenthal v. Dean Witter Reynolds, Inc., No. 85-5552, we affirm the portion of the order denying arbitration of the section 10(b) claims and the portion of the order denying arbitration of the RICO claim based on section 10(b) violations, but we reverse the portion of the order denying arbitration of RICO claims predicated on mail and wire fraud. In Burris v. Paine Webber, Jackson & Curtis, Inc., Nos. 85-5517 and 85-5542, we affirm the order refusing to compel arbitration of the section 10(b) claims.
 
 
 18
 ADAMS, Circuit Judge, concurring in part and dissenting in part.
 
 
 19
 These appeals question whether a party may insist on arbitration, pursuant to a predispute agreement, of a claim for relief under Sec. 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 of the Securities and Exchange Commission or under the Racketeer Influenced and Corrupt Organizations Act (RICO). I agree with the majority's disposition of the nonstatutory issues presented in the case, and, because of controlling precedent in this Circuit, I also agree that claims asserted under Sec. 10(b) and Rule 10b-5 are not arbitrable. However, unlike the majority, I would hold that all RICO actions may be submitted to arbitration pursuant to the parties' valid agreement. Because my views differ from those expressed by the majority, I write separately.I.
 
 
 20
 The question whether Rule 10b-5 actions against brokerage firms may be submitted to arbitration pursuant to a contractual agreement necessitates an analysis of a number of statutes and judicial decisions.
 
 
 21
 An appropriate starting point is the Federal Arbitration Act, 9 U.S.C. Sec. 1 et seq. (1982), which sets forth a federal policy favoring agreements to arbitrate. Section 2 provides, in part, that so long as the contract evidences a transaction involving commerce it "shall be valid, irrevocable, and enforceable, save upon any grounds as exist at law or in equity for the revocation of any contract." Section 3 requires that the district court stay pending actions where arbitration is appropriately invoked.
 
 
 22
 Despite the Federal Arbitration Act, passed in 1925, the Supreme Court held in Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), that claims for relief under the antifraud provision in Sec. 12(2) of the Securities Act of 1933, 15 U.S.C. Sec. 77l(2) (1982), may proceed in a judicial forum regardless of any arbitration agreement between the parties. The Court reasoned that "Sec. 12(2) created a special right to recover for misrepresentation which differs substantially from the common-law action in that the seller is made to assume the burden of proving lack of scienter." 346 U.S. at 431, 74 S.Ct. at 184. In addition, the Supreme Court noted, the 1933 Act affords plaintiffs a choice of state or federal judicial forums, a broad choice of venue, and nationwide service of process. Id.; see Sec. 22(a) of the 1933 Act, 15 U.S.C. Sec. 77v(a) (1982). Because an agreement to arbitrate waives these procedural protections, the Court asserted, it violates the 1933 Act's "non-waiver" clause:
 
 
 23
 Any condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of this subchapter or of the rules and regulations of the Commission shall be void.
 
 
 24
 Sec. 14, 15 U.S.C. Sec. 77n (1982).
 
 
 25
 The Wilko Court explained that arbitration proceedings may lessen the protection Congress aimed to provide to investors through the Securities Act. "As their award may be made without explanation of their reasons and without a complete record of their proceedings, the arbitrators' conception of the legal meaning of such statutory requirements as 'burden of proof,' 'reasonable care' or 'material fact' ... cannot be examined." 346 U.S. at 436, 74 S.Ct. at 187.
 
 
 26
 Section 10(b) of the 1934 Act is similar in many respects to Sec. 12(2) of the 1933 Act, and the 1934 statute includes a non-waiver provision virtually identical to that found in the 1933 Act and relied upon in Wilko. See Sec. 29(a) of the 1934 Act, 15 U.S.C. Sec. 78cc(a) (1982). Further, the 1934 Act, like the earlier statute, contains special procedural rules, including exclusive federal jurisdiction and nationwide service of process. Sec. 27 codified at 15 U.S.C. Sec. 78aa (1982). Thus, it could be argued that the Wilko holding, when logically extended, bars compelled arbitration of suits based on Rule 10b-5.
 
 
 27
 However, in Scherk v. Alberto-Culver Co., 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), a majority of five justices outlined a "colorable argument" that Wilko does not apply to Rule 10b-5 claims. Id., 417 U.S. at 513, 94 S.Ct. at 2454. The Court stressed that unlike Sec. 12(2), which provides an express right of action, the action based on Sec. 10(b) and Rule 10b-5 is merely implied. In interpreting an implied cause of action, the Court suggested, a finding of congressional intent to create an exception to the Arbitration Act may not be warranted. Id. at 513-14, 94 S.Ct. at 2454-55. The four dissenting justices disagreed, arguing that the holding of nonarbitrability in Wilko required a similar result under the 1934 Act. Id. at 525, 94 S.Ct. at 2459. In any event, the majority chose not to resolve the issue, since the case at hand involved a "truly international agreement" implicating unique policies and considerations of comity. Id. at 515, 94 S.Ct. at 2455.
 
 
 28
 Despite the reservations expressed by the Supreme Court in Scherk, two years later this Court held that Rule 10b-5 claims are not susceptible to arbitration agreements. Ayres v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 538 F.2d 532, 536 (3d Cir.1976), cert. denied, 429 U.S. 1010, 97 S.Ct. 542, 50 L.Ed.2d 619 (1976). Although Ayres' consideration of the Rule 10b-5 issue was at best an alternative basis of the result reached, the Rule 10b-5 determination subsequently has been cited in this circuit as an independent and controlling holding. Barrowclough v. Kidder, Peabody & Co., 752 F.2d 923, 940 n. 17 (3d Cir.1985).
 
 
 29
 The Court in Ayres stated that it was not "persuaded that either the differences between the rights granted in the 1933 and 1934 Acts or any consideration of policy" warrants a distinction between the express cause of action under Sec. 12(2) and the implied right under Sec. 10(b). Id. at 536. Similarly, in other circuits there has been "an almost universal tendency in these decisions to distinguish Scherk," Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Moore, 590 F.2d 823, 828 (10th Cir.1978), and to follow Wilko in interpreting the 1934 Act except in international disputes.[1]
 
 
 30
 Ayres paid particular attention to Congress' apparent acquiescence in the extension of Wilko by lower federal courts to bar arbitration of Rule 10b-5 claims. As the Supreme Court would later make clear, the primary consideration in determining the applicability of the Arbitration Act to a statutory cause of action is the intent of Congress. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, --- U.S. ----, 105 S.Ct. 3346, 3355, 87 L.Ed.2d 444 (1985). Thus, the Ayres court observed that, in 1975, Congress had amended Sec. 28(b) of the 1934 Act, 15 U.S.C. Sec. 78bb(b) (1982), to provide that disputes between members or participants in self-regulatory organizations, or between municipal securities dealers and brokers, may be arbitrated. The conference committee stated: "It was the clear understanding of the conferees that this amendment did not change existing law, as articulated in Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), concerning the effect of arbitration proceeding provisions in agreements entered into by persons dealing with members and participants of self-regulatory organizations." H.R.Rep. No. 229, 94th Cong., 1st Sess. 111 (1975), reprinted in 1975 U.S.Code Cong. & Ad.News 321, 342. That the committee included this statement in amending the 1934 Act, the Ayres court concluded, suggests its belief that Wilko applies to causes of action under that Act. See Ayres, 538 F.2d at 537.
 
 
 31
 Whatever the merits of its reasoning, Ayres has not been undermined by subsequent developments. In Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), the Supreme Court decided that the Arbitration Act required that state law claims pendent to nonarbitrable securities law counts be arbitrated, even if the issues overlap and even if the result is piecemeal litigation. The Court noted that whether Wilko applies to suits under Rule 10b-5 is unresolved, Id., 105 S.Ct. at 1240, n. 1, but again did not decide the issue. Significantly, Justice White, who had joined the dissenters in Scherk, apparently reconsidered his views and wrote a concurring opinion reiterating the reservations expressed by the Scherk majority, "to emphasize that the question remains open and the contrary holdings of the lower courts must be viewed with some doubt." Id., 105 S.Ct. at 1244. However, Justice White declined to articulate any considerations that were not expressed in Scherk, and therefore not presented to or examined by this Court in Ayres.
 
 
 32
 The other development since Ayres appears to be the growing judicial appreciation of and deference to arbitration as a means of alternative dispute resolution. This stance may be best discerned in a series of recent Supreme Court decisions enforcing the broad congressional mandate favoring arbitration. See Mitsubishi, supra (antitrust dispute arising out of international agreement is subject to arbitration); Byrd, supra (ordering arbitration of pendent state law claims); Southland Corp. v. Keating, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984) (state laws undercutting the enforceability of arbitration agreements conflict with federal law and violate the Supremacy Clause); Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 941-42, 74 L.Ed.2d 765 (1983) ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration").
 
 
 33
 Nevertheless, this significant trend does not undermine any of the considerations of congressional intent addressed in Ayres. To be sure, arbitration permits a speedy and much less expensive method of resolving many controversies than would be available in a judicial forum, and this is especially salutary in view of crowded federal dockets and exorbitantly costly litigation. But I do not doubt the power of Congress to forbid arbitration of specified statutory claims. I do doubt, however, whether Congress has in fact forbade arbitration in regard to claims asserted under Sec. 10(b).
 
 
 34
 While the Supreme Court may later take a different view of the issues addressed in Ayres, stare decisis requires that any panel of this Court adhere to the undisturbed holding of a prior panel. See Miller v. Drexel Burnham Lambert, Inc., 791 F.2d 850, 854 (11th Cir.1986); McMahon v. Shearson/American Express, Inc., 788 F.2d 94, 97 (2d Cir.1986).
 
 
 35
 Accordingly, although I have some reservations regarding the wisdom of nonarbitrability, I concur in the majority's conclusion that Ayres dictates in this Circuit the nonarbitrability of causes of action premised on Rule 10b-5.
 
 
 36
 The issue whether a 10b-5 claim may be subject to an arbitration agreement is a close and difficult one, however. Neither side of the argument is without merit. It is significant, though, that as the statute requires that any arbitration provision covering a "non-arbitrable" controversy be declared void and unenforceable, 15 U.S.C. Sec. 78cc(a) & (b), the determination that Congress intended to render non-arbitrable implied rights of action under Sec. 10(b) would mean that courts must refuse to give force to all agreements--both pre- and post-dispute--to submit such controversies to arbitration, even after arbitration has taken place.
 
 
 37
 Given that Barrowclough may have incorrectly treated Ayers as binding authority, and in view of the doubts raised as to the continued wisdom of the Ayers approach in light of subsequent Supreme Court statements and the split among the circuits, it might be advisable to reconsider this important and controversial issue in banc. Because of the split in the circuits and the reservations in Sherk and Ayres, however, some uncertainty necessarily will remain until the Supreme Court speaks authoritatively to this issue. Since commercial relations affecting thousands of investors and scores of brokerage houses will remain in the shadow of doubt until then, an early definitive decision by the Supreme Court would be a helpful development.
 
 II.
 
 38
 These appeals also present the difficult question whether RICO claims may be submitted to arbitration against a party's wishes, but in accord with a predispute agreement. Here, we are not encumbered by previous holdings since the issue of arbitrability in RICO situations is one of first impression in this Court.
 
 
 39
 In Mitsubishi, the Supreme Court squarely addressed whether a federal statutory right of action may be the subject of an arbitration agreement, and held that any statutory claim may be arbitrated if congressional intent to the contrary is not evident.
 
 
 40
 Just as it is the congressional policy manifested in the federal Arbitration Act that requires courts liberally to construe the scope of arbitration agreements covered by that Act, it is the congressional intention expressed in some other statute on which the courts must rely to identify any category of claims as to which agreements to arbitrate will be held unenforceable.
 
 
 41
 105 S.Ct. at 3355.
 
 
 42
 As Justice Stevens observed in dissent, the Court had not previously spoken clearly on the issue, although broad language in a series of earlier cases concerning labor arbitration could be read to imply the nonarbitrability of any federal statutory claim. For example, in McDonald v. City of West Branch, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984), the Court held that an unappealed arbitral decision pursuant to a collective bargaining agreement did not preclude a later civil rights suit under 42 U.S.C. Sec. 1983 (1982) based on the same facts. The Court decided that "although arbitration is well suited to resolving contractual disputes ... it cannot provide an adequate substitute for a judicial proceeding in protecting the federal statutory and constitutional rights that Sec. 1983 is designed to safeguard." Id. at 290, 104 S.Ct. at 1803. See also Barrentine v. Arkansas-Best Freight System, Inc., 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) (arbitration does not preclude suit under minimum wage provisions of the Fair Labor Standards Act); Alexander v. Gardner-Denver Co., 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) (right to sue under Title VII of the Civil Rights Act of 1964 is not precluded by prior arbitral decision).
 
 
 43
 In Barrowclough v. Kidder, Peabody & Co., 752 F.2d 923 (3d Cir.1985), this Court relied on these cases and ruled that purely statutory ERISA claims within the federal court's exclusive jurisdiction are not arbitrable. "There is an inherent incompatibility in referring to an arbitrator claims that fall within the exclusive jurisdiction of the federal courts and that arise as part of a comprehensive federal statutory scheme designed to assure protection to those individuals who fall within it." Id. at 940.
 
 
 44
 Mitsubishi spurned the basis proffered for this Court's decision in Barrowclough, stating that "we find no warrant in the Arbitration Act for implying in every contract within its ken a presumption against arbitration of statutory claims." 105 S.Ct. at 3353. Although Mitsubishi, like Scherk, concerned an agreement to arbitrate disputes arising out of an international transaction, the Mitsubishi Court's rejection of a rule of nonarbitrability of statutory claims is stated in a portion of its opinion that is not confined to the context of international agreements. Thus, Mitsubishi would appear to limit the effect of McDonald, Barrentine, and Gardner-Denver. At most, those cases may be seen as construing the intent underlying the particular statutes at issue, or as a rule of preclusion and not of arbitrability, or perhaps as a special presumption against labor arbitrators because of their limited expertise outside the labor field. See Alexander, 415 U.S. at 57, 94 S.Ct. at 1024 ("the specialized competence of arbitrators pertains primarily to the law of the shop, not the law of the land.").
 
 
 45
 Given that even a statutory cause of action is subject to the Arbitration Act, our task is to examine the text and legislative history of the RICO statute for any congressional intent to preclude arbitration of that private right of action. This search reveals no indication that Congress intended to exempt RICO actions from the provisions of the Arbitration Act. Further, none of the special statutory features that motivated the Wilko and Ayres decisions are found in the RICO statute. RICO has no non-waiver provision; indeed, even though it creates a private right of action it affords few procedural protections that would be waived by an agreement to arbitrate.[2] Not only is the statute silent on the arbitration issue, but the legislative history offers no indication that Congress intended to bar arbitration of private RICO actions.
 
 
 46
 Accordingly, those seeking to avoid arbitration of RICO claims rely primarily on considerations of public policy. They insist that arbitrators, whose decisions are not subject to thorough review, should not be responsible for developing this evolving area of law, and that RICO embodies vital federal policies which should be litigated in a judicial forum. Relying on these arguments, the Second Circuit recently ruled that agreements to arbitrate RICO claims are unenforceable. McMahon v. Shearson/American Express, Inc., 788 F.2d 94, 98 (2d Cir.1986).[3] The Second Circuit rested its view on American Safety Equipment Corp. v. J.P. Maguire & Co., 391 F.2d 821 (2d Cir.1968), in which it had held that actions under the Sherman Act are not arbitrable.
 
 
 47
 In Mitsubishi, however, the Supreme Court declined to accept the American Safety rule as applied to antitrust disputes arising out of international agreements. And although, as McMahon observes, the Court carefully limited its holding to the international context, see Mitsubishi, 105 S.Ct. at 3355, its reasoning casts grave doubt on the Second Circuit's broad conception of "the inappropriateness of the United States Arbitration Act when strong public policy considerations are involved." McMahon, 788 F.2d at 98.
 
 
 48
 The notion that judicially decreed public policy determines the arbitrability of particular disputes is inconsistent with the Supreme Court's instruction that only the congressional intent expressed in a statute or its legislative history is relevant to the issue. Second, the Mitsubishi Court itself "confess[ed] to some skepticism of certain aspects of the American Safety doctrine." 105 S.Ct. at 3357. In particular, it rejected the notion that where a statute implicates important public policy a judicial forum is required. Justice Blackmun wrote: "[S]o long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function." Id. at 3358-59.
 
 
 49
 It seems clear, therefore, that public policy considerations do not compel the nonarbitrability of RICO claims. To this extent, the majority and I agree. We part company, however, over the notion that the arbitrability of RICO actions turns on the nature of the predicate offenses underlying such actions.
 
 
 50
 The majority appears to base its position primarily on its concern over the effect of a contrary holding: that Rule 10b-5 claims would not be arbitrable pursuant to the rule of Ayres, while a RICO claim predicated on an identical Rule 10b-5 violation may be submitted to arbitration. In stating that this result is unwarranted, the majority declares: "There is no evidence that Congress intended that the availability of RICO remedies for section 10(b) should suspend the operation of the anti-waiver provision of the Securities Exchange Act of 1934." Majority op. at 1203.
 
 
 51
 This reasoning, I believe, misconceives the appropriate inquiry. The focus must be on whether in enacting a law Congress intended to prevent waiver of the right to a judicial forum; lack of evidence that Congress intended to allow arbitration is insufficient to defeat the strong presumption in favor of arbitration set forth in the Arbitration Act. "We must assume that if Congress intended the substantive protection afforded by a given statute to include protection against waiver of the right to a judicial forum, that intention will be deducible from text or legislative history." Mitsubishi, 105 S.Ct. at 3355.
 
 
 52
 Further, I do not agree that an action under RICO must be treated for purposes of arbitrability as an action under the securities laws whenever it is based upon a predicate offense that violates Rule 10b-5, as the majority's statement above would suggest. A private right of action under RICO is a unique and separate claim to which the Arbitration Act logically applies. RICO is a manifestation of congressional concern with the special harm caused by those who engage in a pattern of wrongful offenses, and the private right of action under the RICO statute is distinct from one based on an underlying offense alone.
 
 
 53
 The structure of the legislation illustrates the distinction. The statute provides a lengthy list of predicate offenses, ranging from broadly described state criminal offenses such as "gambling" and "robbery" to numerous federal criminal, bankruptcy, and securities law provisions. See 18 U.S.C. Sec. 1961(1) (1982). It then proscribes, in part, the operation of any enterprise engaged in or whose activities affect interstate or foreign commerce, using income derived from a "pattern of racketeering activity," id. at Sec. 1962, defined as the commission of at least two predicate offenses within a ten-year period, id. at Sec. 1961(5). Further, an individual may maintain a private claim for injuries suffered as a result of such racketeering activity. Id. at Sec. 1964(c).
 
 
 54
 Given the clear distinction between the nature of a RICO violation and any particular predicate offense, the congressional intent in passing the Securities Exchange Act would not appear to be relevant in an inquiry into the legislative purpose animating RICO. And, focusing solely on the latter inquiry, as noted earlier there is simply no indication that Congress intended to foreclose application of the Arbitration Act to RICO claims.
 
 
 55
 To be sure, the position that all RICO claims are arbitrable, regardless of the predicate offenses averred, would lead to piecemeal litigation. Where a pre-dispute agreement to arbitrate had been entered into, a RICO claim based on Rule 10b-5 violations would proceed in an arbitral forum, while a securities claim based upon similar facts would be litigated in federal court. The issue of what preclusive effect, if any, should be accorded either decision is not before us.
 
 
 56
 While this may not be an optimum use of adjudicative resources, it is the inevitable result where Congress specifies the nonarbitrability of a few statutory provisions and applies the sweeping Arbitration Act to all others. It is also consistent with the Supreme Court's action in Byrd, where it adhered to the Act's mandate and ordered the arbitration of pendent state law claims, while a Rule 10b-5 action concerning the same transactions and alleged wrongs continued in federal court. As the Supreme Court stated in Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 20, 103 S.Ct. 927, 939, 74 L.Ed.2d 765 (1983): "[F]ederal law requires piecemeal resolution when necessary to give effect to an arbitration agreement." Id., 460 U.S. at 20, 103 S.Ct. at 939 (emphasis in original). Should Congress desire a different result, it, of course, may so legislate.
 
 
 57
 In contrast to the result suggested by this opinion the majority's approach not only bifurcates the proceedings, but also compels an unwarranted division of a plaintiff's single RICO claim. It suggests that where a RICO count is predicated on arbitrable and nonarbitrable offenses the RICO claim itself will be split and heard in separate proceedings. Thus, in Blumenthal v. Dean Witter Reynolds, Inc., No. 85-5552, where plaintiff's complaint states only a single count based on RICO, the result reached by the majority would divide that count in order to allow for arbitration of the mail and wire fraud issues and litigation in a court of the securities issues--despite the fact that the unique RICO offense depends, in this case, on whether the enterprise has engaged in mail and wire fraud as well as securities fraud within a ten-year period.
 
 
 58
 In my view, the position espoused by the majority today fails to take note of the unique nature of a RICO violation, and the broad directive set forth in the Arbitration Act.
 
 III.
 
 59
 Accordingly, while I concur in the decision regarding the nonarbitrability of Rule 10b-5 claims, primarily because of prior holdings of this Court, and the arbitrability in general of RICO claims, I respectfully dissent to the extent the majority in Blumenthal and in Jacobson v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., Nos. 85-3282, 85-3311 and 85-3343, forbids the arbitration of RICO claims that are predicated on Rule 10b-5 violations.
 
 
 
 [1]
 Orders granting or denying motions to compel arbitration in actions seeking damages at law are appealable of right under 28 U.S.C. Sec. 1292(a) (1982). See, e.g., Cost Brothers, Inc. v. Travelers Indemnity Co., 760 F.2d 58, 59 n. 1 (3d Cir.1985); Rhone Mediterranee Compagnia v. Lauro, 712 F.2d 50, 51-52 (3d Cir.1983); McCreary Tire & Rubber Co. v. CEAT, 501 F.2d 1032, 1034-35 (3d Cir.1974). All notices of appeal were timely. While two of the district courts certified the Sec. 10(b) arbitration question under 28 U.S.C. Sec. 1292(b) (1982), such certifications were not necessary
 
 
 [2]
 Our holding that RICO claims based on nonarbitrable predicate offenses are not arbitrable conflicts with the holding of the Court of Appeals for the Second Circuit in McMahon v. Shearson/American Express, Inc., 788 F.2d 94 (2d Cir.1986). In addition our holding that Sec. 10(b) claims are not arbitrable is consistent with the Court of Appeals for the Ninth Circuit decision in Conover v. Dean Witter Reynolds, 794 F.2d 520 (9th Cir.1986) but conflicts with the holding of the Court of Appeals for the Eighth Circuit in Phillips v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 795 F.2d 1393 (8th Cir.1986). According to the parties the issues presented by these appeals are pending in the following courts of appeals:
 First Circuit
 Mowbray v. Moseley, Hallgarten, Estabrook & Weeden, Inc., No. 83-2851-C (D.Mass. July 16, 1985) (appeal pending) (dealing with the arbitrability of Sec. 10(b) claims).
 Sevinor v. Merrill Lynch, Pierce, Fenner & Smith, Inc., No. 84-3240-N (D.Mass. July 19, 1985) (appeal pending) (dealing with the arbitrability of Sec. 10(b) and RICO claims).
 Third Circuit
 Fabi v. Dean Witter Reynolds, Inc., No. 85-2881 (D.N.J. Nov. 21, 1985) (appeal pending) (Sec. 10(b) issue).
 Horn v. Merrill Lynch, Pierce, Fenner & Smith, Inc., appeal docketed, No. 86-5215 (3d Cir.) (appeal pending) (Sec. 10(b) and RICO issues).
 Fourth Circuit
 Land v. Dean Witter Reynolds, Inc., 617 F.Supp. 52 (E.D.Va.1985) (appeal pending) (Sec. 10(b) and RICO issues).
 Fifth Circuit
 Beck v. Merrill Lynch, Pierce, Fenner & Smith, Inc., appeal docketed, No. 86-2051 (5th Cir.) (RICO issue only).
 Smoky Greenhaw Cotton Co., Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 785 F.2d 1274 (5th Cir.1986) (request for rehearing pending) (RICO issue only).
 Sixth Circuit
 Lerchen v. Merrill Lynch, Pierce, Fenner & Smith, Inc., No. 83-CV-1479-DT (E.D.Mich. Nov. 29, 1985) (appeal pending) (Sec. 10(b) and RICO issues).
 Sterne v. Dean Witter Reynolds, Inc., C-1-85-24 (S.D.Ohio Jan. 16, 1986) (appeal pending) (dealing with Sec. 10(b) issue).
 Drazdik v. Kidder Peabody & Co., Inc., C85-2442 (N.D.Ohio Mar. 3, 1986) (appeal pending) (Sec. 10(b) issue).
 Eighth Circuit
 Webb v. R. Rowland & Co., Inc., 613 F.Supp. 1123 (E.D.Mo.1985) (appeal pending) (Sec. 10(b) issue).
 Ninth Circuit
 Badart v. Merrill Lynch, Pierce, Fenner & Smith Inc., No. 84-6448 (C.D.Cal. July 25, 1985) (appeal pending) (Sec. 10(b) issue).
 Battershall v. A.G. Becker, Inc., appeal docketed, No. 85-6073 (9th Cir.) (appeal pending) (Sec. 10(b) issue).
 Delman v. Merrill Lynch, Pierce, Fenner & Smith Inc., No. CV 84-3869 (C.D.Cal. June 25, 1985) (appeal pending) (Sec. 10(b) issue).
 Hamling v. Merrill Lynch, Pierce, Fenner & Smith, Inc., No. CV 84-5194 (C.D.Cal. May 15, 1985) (appeal pending) (Sec. 10(b) issue).
 Stratton v. Dean Witter Reynolds, Inc., No. 85-1028 (S.D.Cal. Aug. 12, 1985) (appeal pending) (Sec. 10(b) issue).
 Felkner v. Dean Witter Reynolds, Inc., No. CV 84-3267 (C.D.Cal. May 6, 1985) (appeal pending) (RICO issue).
 Eleventh Circuit
 Gorman v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 780 F.2d 1032 (11th Cir.1985) (request for rehearing in banc granted) (Sec. 10(b) issue).
 Miller v. Dean Witter Reynolds, Inc., No. 84-1079 (S.D.Ala. July 25, 1985) (appeal pending) (Sec. 10(b) issue).
 Roberts v. Lehman Brothers Kuhn Loeb, Inc., No. 84-1421 (S.D.Fla. June 22, 1985) (appeal pending) (Sec. 10(b) issue).
 Wolfe v. E.F. Hutton & Co., Inc., appeal docketed, No. 85-3352 (11th Cir. Dec. 29, 1985) (request for rehearing in banc granted) (Sec. 10(b) issue).
 
 
 [3]
 These claims should be distinguished from claims of violations of rules of the Securities and Exchange Commission. The latter claims were treated as section 10(b) claims
 
 
 [4]
 See also Barrowclough v. Kidder, Peabody & Co., 752 F.2d 923, 940 n. 17 (3d Cir.1985)
 
 
 [1]
 See, e.g., Conover v. Dean Witter Reynolds, 794 F.2d 520 (9th Cir.1986), McMahon v. Shearson/American Exp., Inc., 788 F.2d 94 (2d Cir.1986); Sawyer v. Raymond, James & Associates, Inc., 642 F.2d 791 (5th Cir.1981); Mansbach v. Prescott, Ball & Turben, 598 F.2d 1017, 1039 (6th Cir.1979); MLPF & S, Inc. v. Moore, 590 F.2d 823 (Dec. 78); Weissbuch v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 558 F.2d 831, 833-35 (7th Cir.1977); Sibley v. Tandy Corp., 543 F.2d 540, 543 (5th Cir.1976), cert. denied, 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977); Ayres v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 538 F.2d 532, 536 (3d Cir.), cert. denied, 429 U.S. 1010, 97 S.Ct. 542, 50 L.Ed.2d 619 (1976). However, a split in the circuits has recently emerged with the Eight Circuit's opinion in Phillips v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 795 F.2d 1393 (8th Cir.1986), holding an arbitration clause valid and enforceable
 
 
 [2]
 For example, the statute provides for federal jurisdiction over private claims, but does not specify whether such jurisdiction is exclusive. The courts that have addressed the issue are divided on the question. Compare Chas. Kurz Co. v. Lombardi, 595 F.Supp. 373, 381 n. 11 (E.D.Pa.1984) (concurrent) with Kinsey v. Nestor Exploration Ltd.--1981A, 604 F.Supp. 1365, 1370-71 (E.D.Wash.1985) (exclusive). Cf. Gulf Offshore Co. v. Mobil Oil Corp., 453 U.S. 473, 478, 101 S.Ct. 2870, 2875, 69 L.Ed.2d 784 (1981) (where statute is silent, presumption favors concurrent jurisdiction)
 
 
 [3]
 The Fifth Circuit also reached the conclusion that RICO claims are nonarbitrable, but later vacated that ruling so that the district court could consider the applicability of Mitsubishi to the issue. Smoky Greenhaw Cotton Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 785 F.2d 1274, 1281 (5th Cir.1986), vacated in part, No. 85-1310 (5th Cir. May 13, 1986) (per curiam)