Cecil McCLENDON, Don Vandertulip, Jimmie Catharn, and Konrad Trojanir, on their own and on behalf of all others similarly situated, Plaintiffs,

v.

The CONTINENTAL GROUP, INC., a New York corporation incorporated in 1913; Continental Can Company, Inc., a Delaware corporation; the Continental Group, Inc., a New York corporation incorporated in 1982; and KMI Continental Inc., a New York corporation, Defendants.

Civ. No. 83–1340.

United States District Court,
D. New Jersey.

Oct. 6, 1986.

Siff, Newman, Rosen & Parker, Newark, N.J., Plotkin & Jacobs, Ltd., Davis, Barnhill & Galland, Chicago, Ill., Daniel P. McIntyre, Pittsburgh, Pa., for plaintiffs.

Bell, Boyd & Lloyd, Buchanan, Ingersoll, P.C., Washington, D.C., Williams, Caliri, Miller & Otley, Wayne, N.J., Miller, Cohen, Martens & Ice, Southfield, Mich., Tomar, Seliger, Simonoff, Adourian & O'Brien, Haddonfield, N.J., for defendants.

## OPINION

SAROKIN, District Judge.

The four named plaintiffs, all former employees of the defendants who were laid off prior to becoming eligible for certain employee benefits embodied in a collective bargaining agreement, bring this action on behalf of themselves and all others similarly situated. Plaintiffs allege that defendants have violated Section 510 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1140, and the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c) and (d). The predicate acts underlying the RICO allegations are mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. 1343.

Before the court is defendants' motion to dismiss the complaint. The question presented is whether the plaintiffs must exhaust the arbitration remedy contained in the Continental-United Steelworkers collective bargaining agreement before they may litigate their ERISA and RICO claims. This court has held previously that such exhaustion was not required for the ERISA claims. *McClendon v. Continental Group, Inc.*, 602 F.Supp. 1492, 1500–06 (D.N.J.1985). In light of the Third Circuit's recent decision in *Jacobson v. Merrill Lynch, Pierce, Fenner & Smith*, 797 F.2d 1197 (3d Cir.1986), the court requested briefing and further argument on the arbitrability of all claims.

The court, after thorough consideration of *Jacobson*, denies defendants' motion to dismiss as to both ERISA and RICO claims.

DISCUSSION

*Jacobson* held that "RICO claims predicated on mail and wire fraud are arbitrable." 797 F.2d 1197 at 1205. The court, in so holding, adopted the framework for determining the arbitrability of statutory claims set forth by the U.S. Supreme Court in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). The *Mitsubishi* Court approved of a two step inquiry: (1) "whether the parties' agreement to arbitrate reached the statutory issues" and (2) "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Id.* at 3355.

The first step of the *Mitsubishi* analysis, essentially that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit," is well established. *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960); *see, e.g., DelGrosso v. Spang and Co.*, 769 F.2d 928, 933 (3d Cir.1985). The novel holding in *Mitsubishi,* and the basis for the Third Circuit's decision in *Jacobson,* is that a party who has agreed to arbitrate must do so "unless Congress itself has evinced an intention to preclude a waiver of

judicial remedies for the statutory rights at issue." *Mitsubishi*, 105 S.Ct. at 3355. Thus, a statutory claim is "arbitrable"— that is, capable of being subjected to arbitration by the parties' prior agreement— unless there is a congressional intention, "deducible from text or legislative history," to the contrary. *Id.*

Following the dictates of *Mitsubishi* and *Jacobson*, this court first must examine whether plaintiffs' statutory claims fall within the arbitration provisions of the Continental-USW collective bargaining agreement. The court finds that plaintiffs' claims fall outside the reach of these provisions.

Initially, the court takes note of plaintiffs' argument that the Continental-USW arbitration agreement, regardless of its scope, was induced by fraud. *Mitsubishi* counsels that "courts should remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud ... that would provide grounds" for revocation of the contract. 105 S.Ct. at 3354. Two federal judges in related cases have found that Continental had concealed the capping program from its employees. Plaintiffs argue that any agreement by the union to arbitrate claims regarding the capping program was fraudulently induced by defendants' concealment. The court does not reach this argument given its holding that the arbitration provisions do not encompass plaintiffs' statutory claims.

The court moves to the first step of the *Mitsubishi-Jacobson* analysis—determination of whether plaintiffs' claims fall within the arbitration provisions at issue.

The court is mindful of the federal common law presumption in favor of arbitrability when construing a collective bargaining agreement. *See United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1029 (1960) ("Doubts should be resolved in favor of coverage."); *see also Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 104 S.Ct. 1844, 1848–49, 80 L.Ed.2d 366 (1984) (restating the *Steelworkers* presumption).[1] Notwithstanding the strength of this presumption, the court recognizes that "as with any other contract, the parties' intentions control." *Mitsubishi*, 105 S.Ct. at 3354; *see Warrior & Gulf*, 363 U.S. at 582, 80 S.Ct. at 1352 ("[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.").

Two provisions in the collective bargaining agreement conceivably embrace plaintiffs' claims. Section 7.1(a) of the Continental—United Steelworkers pension agreement reads:

1. This presumption is a creation of federal common law under Section 301 of the Labor Management Relations Act, 29 U.S.C. 185(a). *See Textile Workers v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). The presumption of arbitrability applicable to the commercial contracts in *Mitsubishi* and *Jacobson*, in contrast, arises from the Federal Arbitration Act, 9 U.S.C. 1 et seq. See *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). The Federal Arbitration Act does not apply to "contracts of employment of ... any ... class of workers engaged in foreign or interstate commerce." 9 U.S.C. 1. After some vacillation, the Third Circuit has indicated that this language, coupled with the infrequent use of the Arbitration Act in this area after the *Steelworkers* decisions, raises "a serious question as to whether the applicability of the Act to labor arbitration agreements retains any vitality in this circuit."

    The court has reservations as to the application of the *Steelworkers* presumption to the facts of this case. The Court in *Schneider* reiterated that the presumption "promotes labor peace because it requires the parties to forego the economic weapons of strikes and lockouts." 104 S.Ct. at 1849. In *Warrior & Gulf* itself, the Court contrasted arbitration clauses in commercial contracts (that present arbitration as a substitute for litigation) to such clauses in collective bargaining agreements (where arbitration is a substitute for industrial strife). 363 U.S. at 578, 80 S.Ct. at 1350.

    Labor peace is not an issue in *McClendon*. No dispute exists betwen union and employer that may lead to a work stoppage. The choice presented is between litigation and arbitration of claims brought by plaintiffs, former employees. This court notes the ill fit of the presumption to this case; the court nonetheless applies it and finds against the defendants.

If, during the term of this Agreement, any differences shall arise between the Company and any Employee who shall be an applicant for a ... pension ... as provided in this Agreement, as to whether or not such Employee is entitled to or as to the amount of such ... pension ..., such differences ... may be taken up as a grievance in accordance with the applicable provisions of the Master Agreement....

Plaintiffs' claim that defendants engaged in an illegal capping program falls outside of this language. First, plaintiffs, as former employees, are not "applicants" for pensions. Nor are plaintiffs' claims differences "as to whether or not [an] Employee is entitled to" a pension. As Judge Bloch stated in the related *Gavalik* case, in holding that Section 7.1(a) does not embrace ERISA Section 510 claims, "The plaintiffs' claim is not that they have been denied their pensions, but that they have been denied the opportunity to eventually become entitled to a pension." *Gavalik v. Continental Can Co.*, No. 81–1519, slip op at 1 (W.D.Pa. May 24, 1982); *cf. Zipf v. American Telephone and Telegraph Co.*, 799 F.2d 889, 891–892 (3d Cir.1986) (distinguishing, for the purposes of exhaustion of administrative remedies, claims for pension benefits and Section 510 discrimination claims). Section 7.1(b) of the Pension Agreement supports this construction. That section states that the arbitrator "shall have authority only to interpret and apply the provisions of this Agreement, but he shall not have authority in any way to alter, add to or subtract from any such provisions."

Defendants' argue also that plaintiffs' claims are arbitrable under Section 13.[2] of the Master Agreement. That section defines "grievance" as

any difference between the Local Management and the Union or employees as to the interpretation or application of or compliance with this Agreement respecting wages, hours, or conditions of employment.

This is the language of a "standard" arbitration clause, confining arbitration to questions of contract interpretation or application. *See United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 567–68, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960). Plaintiffs' claims involve interpretation or application of federal statutes, not the collective bargaining agreement. They do not fall within the standard arbitration clause.

Section 13.10 of the Master Agreement supports this conclusion. The section reads in part:

The Arbitrator shall not have jurisdiction to alter or amend in any way the provisions of this Agreement and his decision must be in accordance with the terms of this Agreement.

Given this and related provisions of the Agreement, [2] the arbitrator cannot engage in the statutory interpretation necessary to adjudicate plaintiffs' claims. *See Iowa Beef Packers, Inc. v. Thompson*, 405 U.S. 228, 92 S.Ct. 859, 31 L.Ed.2d 165 (1972) (stating that a Fair Labor Standards Act claim does not fall within a standard arbitration clause); *U.S. Steel & Carnegie Pension Fund v. McSkimming*, 759 F.2d 269 (3d Cir.1985) (holding that an arbitrator exceeded his authority under a standard clause by basing an award on his interpretation of ERISA). Defendants do not identify any section of the Agreement to be interpreted or applied by the arbitrator (other than their unsuccessful arguments under Section 7.1 of the Pension Agreement).[3]

---

**2.** Section 13.6 requires the grievant or union representative to provide Company officials with a written statement including "the provisions of the Agreement relied upon." Section 13.7 requires any written grievance to state "the Section or Sections of the Agreement believed to have been violated." Section 7.1(b) of the Pension Agreement reemphasizes that an arbitrator, in deciding a grievance, "shall have authority

only to interpret and apply the provisions of this Agreement."

**3.** Defendants' argument under Section 14.1(d) of the Master Agreement—calling for arbitration of disputes over disciplinary discharges and layoffs—is without merit. Article 14 outlines procedures for discipline "for cause" only. The

The arbitration provisions in *Jacobson* and *Mitsubishi*, in contrast, extend well beyond matters of contract interpretation. The *Jacobson* agreement made arbitrable "any controversy between us arising out of your business or this agreement." 797 F.2d 1197 at 1202. The *Mitsubishi* agreement made arbitrable all differences "which may arise between the parties out of or in relation to [specified sections of the agreement] or for the breach thereof." 105 S.Ct. at 3349. *See also United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 576, 80 S.Ct. 1347, 1349, 4 L.Ed.2d 1409 (1960) (differences "as to the meaning and application of the provisions of this Agreement, or should any local trouble arise"). Such provisions explicitly authorize arbitration of matters outside the bounds of the contract, including statutory claims.

Two recent Third Circuit cases illustrate the difference between broad, *Jacobson*-type clauses and the more narrowly drawn arbitration clause in Continental-USW agreement. In *Barrowclough v. Kidder, Peabody & Co.*, the court held that ERISA Section 510 claims fell within a broad provision making arbitrable "any controversy arising out of my employment or the termination of my employment." 752 F.2d 923, 937–38 (3d Cir.1985). By contrast in *DelGrosso v. Spang and Co.*, the court held that plaintiffs' claims concerning the Company's distribution of excess pension funds did not come within a clause making arbitrable "any difference [that arises] as to any person's right to a pension of the amount of pension." 769 F.2d 928, 933 (3d Cir.1985).

*DelGrosso* indicates that, notwithstanding the *Steelworkers* presumption in favor of arbitrability, a court cannot expand an arbitration provision narrowly drawn by the parties.

The court concludes that plaintiffs' claims fall outside of the arbitration provisions of the Continental-USW collective bargaining agreement. The court need not go beyond the first step of the *Mitsubishi* inquiry because it holds that the plaintiffs have not agreed to arbitrate either their ERISA or RICO claims.[4]

Defendants' motion to dismiss for failure to submit to arbitration is denied.

cited section has nothing to do with the "economic" layoffs involved here.

Section 13.2 states, "Any dispute over whether a complaint is subject to these procedures shall be handled as a grievance in accordance with the procedures prescribed herein." The purpose of this language, viewing the arbitration procedure as a whole, is to prevent the employer from aborting arbitration merely by claiming that the grievance is nonarbitrable. Once an employee or the union initiates arbitration, this provision enables the arbitrator to evaluate the employer's defense of nonarbitrability.

4. Assuming arguendo that the arbitration clause was held to cover plaintiffs' claims (so that the

second step of the *Mitsubishi* test would be reached), *Jacobson* holds that RICO does not relieve the plaintiffs' from their contractual duty to arbitrate. However, the legislative history of ERISA Section 510 arguably indicates a congressional intention to preclude arbitration of such claims. *See Zipf v. American Telephone & Telegraph Co.*, 799 F.2d 889, 892 (3d Cir. August 27, 1986); *McClendon v. Continental Group, Inc.*, 602 F.Supp. 1492, 1504 (D.N.J. 1985). The court does not reach this question because of its holding that the plaintiffs have not agreed to arbitrate their claims.