John **SINGER**

v.

**DEAN WITTER REYNOLDS INC., et al.**

**Civ. A. No. 84–1984–Y.**

United States District Court, D. Massachusetts.

Aug. 6, 1985.

**1142**

Jeffrey V. Boxer, Boston, Mass., for plaintiffs.

Gerald F. Rath, David C. Boch, Herrick & Smith, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

This action arises out of a 1982 agreement under which the plaintiff John Singer ("Singer") invested approximately $65,000 through defendant Dean Witter Reynolds Inc. ("Dean Witter"), a securities broker-dealer. Under that agreement, the funds in Singer's account were to be used for the trading of securities and commodities, as well as for other financial services. According to Singer, in five months time his account lost $50,000 and Dean Witter earned $27,000 in commissions.

On June 26, 1984, Singer brought this action against Dean Witter and certain Dean Witter representatives for alleged violations of the Securities Exchange Act of 1934, § 10(b) (Counts One and Two); churning (Count Three); violations of the Commodity Exchange Act (Count Four); violation of the Massachusetts Uniform Securities Act (Count Five); misrepresentation (Count Six); breach of fiduciary duty (Count Seven); violation of Mass.Gen.Laws Chapter 93A (Count Eight); and breach of contract (Count Nine). The defendants have now moved to compel arbitration of Counts One, Two, Three, Five, Six, Seven, and Nine, and to dismiss Count Eight.[1] For the reasons stated below, the motion to compel arbitration is denied and the motion to dismiss Count Eight is granted.

### I. *Arbitration*

When Singer invested his funds with Dean Witter in 1982, he signed an "Active Assets Account" agreement providing that any controversy between Dean Witter and Singer "arising out of or relating to this contract or the breach thereof, shall be settled by arbitration, in accordance with the rules, then obtaining, of either the American Arbitration Association, or the Board of Arbitration of the New York Stock Exchange." Citing this provision, the defendants have moved to compel arbitration of all Counts except Count Four[2] and to stay all proceedings relating to those counts. Singer has opposed the defendants' motion on several grounds.

The threshold question is whether the defendants have waived their rights to arbitration. The Federal Arbitration Act, 9 U.S.C. §§ 1–14, provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract." *Id.* § 2. The Act autho-

---

1. The defendants also moved to dismiss Count Five to the extent it alleges violations of Sections 201(a), 301, 303(d), 403, or 405(b) of Mass. Gen.Laws c. 110A, the Uniform Securities Act. The plaintiff has agreed to limit Count Five to recovery based on Section 410(a)(2) of that Act.

2. Both parties agree that the claims under the Commodities Exchange Act (Count Four) are not subject to arbitration.

rizes parties to an arbitration agreement to petition a federal district court for an order compelling arbitration of any issue referable to arbitration under the agreement. *Id.* at §§ 3, 4.

There is a strong federal policy favoring the arbitration of contractual disputes when the parties have so agreed to arbitrate. *Dean Witter Reynolds Inc. v. Byrd,* —— U.S. ——, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983).

Despite the policies favoring arbitration, however, it has long been held that parties may waive their rights to arbitration and present their dispute to a court. *See, e.g., Caribbean Ins. Serv. v. American Bankers Life Assur. Co.,* 715 F.2d 17, 18–19 (1st Cir.1983). Such a waiver need not be express; rather, courts can infer a waiver from the circumstances. *Jones Motor Co. v. Chauffeurs, Teamsters and Helpers Local Union No. 633,* 671 F.2d 38, 44 (1st Cir.1982), *cert. denied,* 459 U.S. 943, 103 S.Ct. 257, 74 L.Ed.2d 200 (1983).

Singer filed his complaint in this action on June 26, 1984. The defendants answered on August 6, 1984, without raising the issue of arbitration. Over the course of the next nine months, the defendants continually sought to employ the machinery available through this Court to defend and resolve this dispute. At or about the time it filed its answer, Dean Witter initiated discovery requests, including interrogatories and a request for production of documents. On October 26, 1984, the parties participated in a scheduling conference with the Court pursuant to Fed.R. Civ.P. 16(b), at which time it was ordered that all discovery would be completed by June 1, 1985, and all dispositive motions would be filed by that same date. At that same scheduling conference, the parties requested that the case be referred to a Magistrate for purposes of settlement negotiations. On October 30, 1984, counsel for the defendants proposed a specific short-term discovery schedule prior to a settlement conference.

During the next several months, there was considerable skirmishing over various discovery requests. In particular, Dean Witter moved to compel production of Singer's federal income tax records, and a limited order to that effect was issued by the Magistrate on January 4, 1985. When Singer failed to comply promptly with that order, Dean Witter moved for sanctions and attorney's fees, arguing that "the plaintiff's callous disregard of the discovery process should not be permitted." During the spring of 1985, there was further wrangling over certain interrogatories and document production requests directed to Dean Witter, which again required the involvement of both a District Judge and a Magistrate.

This brief summary of certain discovery proceedings is not meant to suggest that any of the parties in this case have abused the discovery process. Rather, it is offered to show that all parties, including the defendants, engaged in vigorous discovery and proceeded with the intent to resolve this dispute through the judicial process and not through arbitration. Consistent with the discovery schedule established in October 1984, the parties promptly sought to complete discovery and then proceed to a trial on the merits. On several occasions during these discovery proceedings, Dean Witter sought the intervention of the Court. *See Caribbean Ins. Serv., supra,* 715 F.2d at 19–20 ("a party's willingness to submit a dispute to trial on the merits may imply a waiver of the right to arbitration"); *Jones Motor Co., supra,* 671 F.2d at 44.

At no time during this active discovery period did the defendants ever mention the possibility or prospect of arbitration. As late as May 17, 1985, the defendants no-

ticed the taking of Singer's deposition and filed with the Court a nine-page memorandum arguing various discovery matters, with no reference to arbitration. On May 30, 1985, the parties filed a joint motion to extend the time for discovery from June 1, 1985 to September 1, 1985, on the ground that certain discovery issues soon would be resolved in a hearing before the Magistrate; the defendants still made no reference to arbitration. On June 4, 1985, this Court allowed the motion to extend the time for discovery and set the case for trial on September 3, 1985. Two days later— nearly a year after the complaint was filed—the defendants first raised the issue of arbitration and filed the motion that is presently before the Court.

In *Jones Motor Co.*, the Court of Appeals outlined the relevant factors to be considered in deciding whether a party has waived its right to arbitration:

> In determining whether a party to an arbitration agreement, usually a defendant, has waived its arbitration right, federal courts typically have looked to whether the party has actually participated in the lawsuit or has taken other action inconsistent with his right, ... whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit by the time an intention to arbitrate was communicated by the defendant to the plaintiff, ... whether there has been a long delay in seeking a stay or whether the enforcement of arbitration was brought up when trial was near at hand....
>
> Other relevant factors are whether the defendants have invoked the jurisdiction of the court by filing a counterclaim without asking for a stay of the proceedings, ... whether important intervening steps [*e.g.*, taking advantage of judicial

discovery procedures not available in arbitration ...] had taken place, ... and whether the other party was affected, misled, or prejudiced by the delay....

671 F.2d at 44 (bracketed text in original) (reversible error to order arbitration where the defendant engaged in considerable discovery, prepared the case for summary judgment, and waited until after the district court had decided that issue before advocating arbitration) (quoting *Reid Burton Constr. Inc. v. Carpenters District Council*, 614 F.2d 698, 702 (10th Cir.), *cert. denied*, 449 U.S. 824, 101 S.Ct. 85, 66 L.Ed.2d 27 (1980)); *see Caribbean Ins. Serv., supra*, 715 F.2d 17 (defendant waived arbitration right when it first moved for a stay six months after complaint was filed and three weeks after entering into stipulation providing for an expeditious trial); *Gutor International AG v. Raymond Packer Co.*, 493 F.2d 938, 945 (1st Cir.1974).

Applying these standards to the circumstances of this case, this court rules that the defendants have waived their rights to arbitration. Therefore, the defendants' motion to compel arbitration and for a stay is denied.[3]

## II.  *Chapter 93A Claim*

■ The defendants have moved to dismiss Count Eight on the ground that Chapter 93A of the Massachusetts General Laws does not apply to the transactions at issue in this case. The defendants rely on the recent opinion in *Cabot Corp. v. Baddour*, 394 Mass. 720, 477 N.E.2d 399 (1985), in which the Supreme Judicial Court held that c. 93A does not apply to conduct alleged to violate Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated under that Act. In response, Singer argues that *Cabot* is limited solely

---

**3.** Because the defendants have waived their arbitration right, it is unnecessary to decide whether the claims contained in Counts One, Two, Five and Eight are arbitrable. With respect to Counts One and Two, see *Dean Witter Reynolds Inc. v. Byrd*, — U.S. —, 105 S.Ct. 1238, 1244, 84 L.Ed.2d 158 (1985) (White, J., concurring). *Compare Sibley v. Tandy Corp.*,

543 F.2d 540, 543 & n. 3 (5th Cir.1976) (claims under 1934 Securities Exchange Act not arbitrable), *cert. denied*, 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977) *with Raiford v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, slip op. (N.D.Ga. May 16, 1985) (claims under section 10(b) of 1934 Act arbitrable).

to Section 10(b) and Rule 10b–5 claims and does not apply to his claims arising under the Commodity Exchange Act or to his common law claims.

The Supreme Judicial Court in *Cabot* held that the Massachusetts Legislature did not intend to regulate securities transactions under c. 93A because those transactions are not regulated by the Federal Trade Commission, *see* Mass.Gen.Laws c. 93A, § 2(b) (providing that courts are to be guided by interpretations of the FTC Act in applying c. 93A), and are pervasively regulated by federal securities laws. 394 Mass. at 722–23, 477 N.E.2d 399. The Court further emphasized that the Massachusetts Uniform Securities Act, Mass.Gen.Laws c. 110A, was enacted just four days after the Legislature enacted c. 93A, § 11. Because c. 110A provides a comprehensive regulatory scheme for the registration and sale of securities, the Legislature did not intend c. 93A to regulate the securities field. 394 Mass. at 723–26, 477 N.E.2d 399.

The Supreme Judicial Court distinguished its prior holdings in *Dodd v. Commercial Union Ins. Co.*, 373 Mass. 72, 365 N.E.2d 802 (1977) (applying c. 93A to the insurance industry), and *Raymer v. Bay State Nat'l Bank*, 384 Mass. 310, 424 N.E.2d 515 (1981) (applying c. 93A to the banking industry).[4] While the insurance and banking industries are "areas in which the states have long played a primary role in regulation," federal law has largely superseded state regulation of securities. *Cabot,* 394 Mass. at 722–23, 477 N.E.2d 399, quoting *Conkling v. Moseley, Hallgarten, Estabrook & Weeden, Inc.,* 575 F.Supp. 760, 761 (D.Mass.1983) (holding that c. 93A does not apply to a claim of churning).

Although the question certified to the Supreme Judicial Court in *Cabot* was limited to Section 10(b) and Rule 10b–5 claims under the Securities Exchange Act of 1934, the reasoning of *Cabot* applies equally to the types of commodities transactions involved in this dispute. True, there are many different types of commodities transactions and it is a vast oversimplification to simply state that "commodities" are "securities" for purposes of analyzing investors' rights. *See generally* Bromberg, *Commodities Law and Securities Law—Overlaps and Preemptions,* 1 J.Corp.Law 217, 220–21 (1976). In this case, however, Singer's contract with Dean Witter was an investment contract in which Singer invested his money with an expectation that Dean Witter would turn a profit for him, and depended on Dean Witter to make the investment decisions. *See Glen-Arden Commodities, Inc. v. Constantino,* 493 F.2d 1027, 1034–35 (2d Cir.1974); Bromberg, *supra,* at 223–27. Under these circumstances, the commodity transactions at issue are very similar to securities transactions, and should be treated in a similar fashion. *See* Mass.Gen.Laws c. 110A, § 401(k) (the term "security" for purposes of the Uniform Securities Act includes "investment contract").

With respect to the regulatory aspects of this question, Congress has long provided for comprehensive federal regulation in the commodities field. In fact, federal commodities law is older than federal securities law, with extensive regulation beginning as early as 1922 with passage of the Grain Futures Act. *See generally* Bromberg, *supra,* at 268–72. In 1974, Congress established the Commodity Futures Trading Commission as an independent regulatory agency to oversee the trading of commodity futures contracts and to provide uniform regulation of all commodity futures trading. Although the defendants have suggested that the Futures Trading Act of 1982 cuts back on this extensive federal regulation, that argument is not persuasive. *See* 1982 U.S.Code Cong. & Ad. News (96 Stat.) 3871 (legislative history of Futures Trading Act of 1982).

---

**4.** Singer attempts to bring this case within the scope of *Raymer* by arguing that the account he opened with Dean Witter included banking and checking functions. Assuming this to be so, there is nothing in the record to suggest that any of Singer's claims relate in any way to these functions.

There is additional guidance from the *Cabot* decision itself. There, the Supreme Judicial Court included in its discussion the decision in *Sullivan v. Dean Witter Reynolds Inc.*, No. 82–3300, slip. op. at 8–9 (D.Mass. June 9, 1983), a case involving commodities trading, and quoted that part of *Sullivan* which stated that "[t]here is nothing in the Supreme Judicial Court's interpretations of ch. 93A that would justify varying treatment of commodities trading and securities violations." 394 Mass. at 722 & n. 2, 477 N.E.2d 399. Although the Supreme Judicial Court did not explicitly adopt this statement as its own, its discussion gives strong support for the proposition that the commodities transactions at issue here would be treated the same as securities transactions for purposes of c. 93A. With respect to Singer's common law claims, those claims all arise out of the securities and commodities transactions, and c. 93A cannot be applied separately to them.

For the reasons stated, the motion to dismiss the c. 93A claim (Count Eight) is ALLOWED, and the motion to compel arbitration is DENIED.