**Sally D. HURLBUT, Plaintiff,**

v.

**Martin GANTSHAR and Paine, Webber, Jackson and Curtis, Incorporated, Defendants.**

**Civ. A. No. 85–3528–Y.**

United States District Court, D. Massachusetts.

July 20, 1987.

David Cavers, Powers & Hall, Prof. Corp., Boston, Mass., for plaintiff.

Edward Robinson, Gaston Snow & Ely Bartlett, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

In July, 1982, Sally Hurlbut ("Hurlbut") consolidated her various brokerage accounts and transferred them to Paine, Webber, Jackson and Curtis Incorporated ("Paine Webber"). Hurlbut's investments totaled $279,841.07 on the day she authorized Martin Gantshar ("Gantshar") to broker her account at Paine Webber. Hurlbut knew Gantshar through mutual acquaintances and the two had worked together on several charity committees. Gantshar serviced Hurlbut's account for over two years, engaging in trading practices which Hurlbut alleges risked her securities by margin investment, churned her account by excessive trading, and willfully disregarded her known wishes with intent to defraud. Hurlbut brings this action stating that Gantshar's various actions generated enormous commissions for himself and seriously depleted her account.[1]

---

1. Hurlbut alleges that in the six months of 1982 when her net average investment was $224,315, commissions totaled $39,312. In 1983, when Hurlbut's net average investment account was $170,328, commissions totaled $79,946. In 1984, during the time she maintained an account, when Hurlbut's net average investment account was $47,825, commissions reached

She brings a five count complaint for violations of: § 10(b) of the Securities Exchange Act of 1934 ("the 1934 Act"), 15 U.S.C. § 78j, and Rule 10(b)(5) promulgated thereunder (Count I as against Gantshar); § 15(c)(1) of the 1934 Act, 15 U.S.C. § 780(c)(1), and Rule 15c 1-2 (Count II as against Gantshar); § 20 of the 1934 Act, 15 U.S.C. § 78t (Count III as against Paine Webber); the common law doctrine of *respondeat superior* (Count IV as against Paine Webber); and 18 U.S.C. § 1964(c)—the "RICO" statute, so called (Count V and against Gantshar).

At this time, however, the Court is not asked to reach the merits of Hurlbut's claims but rather their arbitrability. Gantshar and Paine Webber assert that provisions in the Client's Agreement and Client Option Agreement and Qualification Form ("Option Agreement"), two documents signed by Hurlbut at the time she authorized her investment account, mandate arbitration rather than adjudication.[2] In relevant part, the Client's Agreement provides that any controversy between Hurlbut and Paine Webber "arising out of or relating to this contract or breach thereof" shall be settled by arbitration. The Option Agreement provides that "any controversy arising out of the handling of any of the transactions referred to in this Agreement shall be settled by arbitration...." Relying upon these two agreements, Gantshar and Paine Webber now move to stay any action in the federal court and to compel arbitration of Hurlbut's claims. By way of defense, Hurlbut argues sequentially that 1) Gantshar and Paine Webber waived their arbitration rights; 2) the arbitration clauses of the Agreements are unenforceable; 3) the Agreements are by their terms self-limiting and fail to embrace disputes concerning excessive trading; and 4) her claims under the 1934 Act are exempt from arbitration as matter of law.

### Waiver of Arbitration Rights by Gantshar and Paine Webber

Hurlbut contends that Gantshar and Paine Webber have waived any right to arbitration by their conduct in the instant matter. Hurlbut points to a five month lapse between the filing of the complaint and the defendants' joint motion to stay federal proceedings and to compel arbitration. Moreover, Hurlbut suggests that Gantshar and Paine Webber "have evinced an intention of going forward in this federal District Court and have employed tactics to avoid meaningful litigation." Hurlbut asserts that these actions prejudice her claim apparently because she relied in some manner on what she terms a "failure to seek arbitration while acquiescing in court resolution of the dispute." *Jones Motor Company, Inc. v. Chauffeurs, Teamsters and Helpers Local Union No. 633 of New Hampshire*, 671 F.2d 38, 43 (1st Cir.1982), cert. denied 459 U.S. 943, 103 S.Ct. 257, 74 L.Ed.2d 200 (1982) (other cases cited by Hurlbut omitted).

The threshold question is whether the defendants have waived their right to arbitration. The Federal Arbitration Act, 9 U.S.C. §§ 1-14, provides that arbitration agreements "shall be valid, irrevocable,

$9,096. Hurlbut's account decreased from approximately $279,841 in July of 1982 to approximately $27,590 at the end of December, 1984, and she seeks to recover the difference of $252,-251.

2. "Effective December 28, 1983, the Securities and Exchange Commission promulgated a regulation making it a 'fraudulent, manipulative or deceptive act' for a broker 'to enter into an agreement with any public customer which purports to bind the customer to the arbitration of future disputes between them arising under the Federal securities laws....' 17 C.F.R. § 240.15c2-2(a) (1985). This regulation goes on to mandate that for agreements entered into prior to December 28, 1983, the broker is required to send a notice 'no later than December 31, 1984' informing customers that the arbitration agreements they executed do not cover federal securities laws. *Id.* at § 240.15c2-2(c)." *Jacobson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 797 F.2d 1197, 1201 (3d Cir.1986). Since the acts complained of by Hurlbut all took place prior to December 31, 1984 and her agreement with Paine Webber antedated December 28, 1983, the new regulation has no application to the present case. *Id.* at 1201. Still, it is passing strange that in its eagerness to avoid the judicial forum, a broker of the stature of Paine Webber is relying entirely upon an agreement which today is clearly labelled a "fraudulent, manipulative or deceptive act."

and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract." *Id.* § 2. The Act authorizes parties to an arbitration agreement to petition a federal district court for an order compelling arbitration of any issue referable to arbitration under the agreement. *Id.* at §§ 3, 4.

There is a well-established and widely recognized federal policy favoring arbitration of contractual disputes when the parties have agreed to arbitrate. *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). Moreover, "the Arbitration Act establishes that, as matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).

Despite policies favoring arbitration, however, courts have long held that parties may waive their rights to arbitration and present their dispute to a court. *Caribbean Insurance Services, Inc. v. American Bankers Life Assurance Company,* 715 F.2d 17, 18–19 (1st Cir.1983); *Jones Motor Co.,* 671 F.2d at 42; *Singer v. Dean Witter Reynolds, Inc.,* 614 F.Supp. 1141, 1144 (D.Mass.1985). Such a waiver need not be express; courts can infer waiver from the circumstances. *Caribbean Insurance Services,* 715 F.2d at 19–20; *Jones Motor Co.,* 671 F.2d at 44. Nonetheless, a court should not be "overready to find a waiver." *Id.* at 42 (citing *Operating Engineers, Local 150 v. Flair Builders Inc.,* 406 U.S. 487, 92 S.Ct. 1710, 32 L.Ed.2d 248 [1972] ).

Hurlbut notes that five months passed between the filing of her complaint and the defendants' motion to stay proceedings pending arbitration. During this period, Hurlbut vigorously engaged in discovery, allegedly relying upon the defendants apparent willingness to litigate the dispute in federal court. She also propounded interrogatories and apparently deposed the defendants. While the Court sympathizes with Hurlbut's expenditure of time and money in the process of pursuing her own scheme of discovery, such expenditures are part of the costs of bringing a lawsuit. *See Sevinor v. Merrill Lynch, Pierce, Fenner & Smith,* No. 84–3240–N, slip op. at 3–6 (D.Mass. July 19, 1985) [Available on WESTLAW, 1985 WL 2303] (Order on Defendants' Motions to Compel Arbitration and to Stay Discovery, Alexander, M.), after further consideration by the District Court, *affirmed,* 807 F.2d 16 (1st Cir.1986).

Hurlbut urges that by their actions Gantshar and Paine Webber acquiesced in a judicial resolution in a way which "compel[s] an inference of waiver" of their arbitration rights. In *Jones Motor Co.,* the First Circuit outlined the relevant factors to be considered in deciding whether a party has waived its right to arbitration:

> In determining whether a party to an arbitration agreement, usually a defendant, has waived its arbitration rights, federal courts typically have looked to whether the party has actually participated in the lawsuit or has taken other action inconsistent with his right, ... whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit by the time an intention to arbitrate was communicated by the defendant to the plaintiff, ... whether there has been a long delay in seeking a stay or whether the enforcement of arbitration was brought up when trial was near at hand....

> Other relevant factors are whether the defendants have invoked the jurisdiction of the court by filing a counterclaim without asking for a stay in the proceedings, ... whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration ...] had taken place, ... and whether the other party was affected, misled or prejudiced by the delay.

*Jones Motor Co.,* 671 F.2d at 44, (quoting *Reid Burton Construction, Inc. v. Carpenters District Council,* 614 F.2d 698, 702 [10th Cir.1980] ) (brackets in original);

*Singer v. Dean Witter Reynolds Inc.*, 614 F.Supp. at 1144.

While Hurlbut urges the Court to infer waiver, on the contrary, the Court holds that by their Seventh Affirmative Defense defendants Gantshar and Paine Webber have preserved their rights by pleading that: "This action is barred by an arbitration agreement between the parties" and, failing dismissal, in the alternative, "all further proceedings in this action be stayed pending arbitration." Even as late as May 6, 1986, in their Notice of Deposition of Plaintiff for Limited Purpose, Gantshar and Paine Webber noted:

> The purpose of this deposition is limited to the conscionability of the arbitration clause between the parties. Defendants are taking this deposition for the sole purpose of preserving and defending their rights to arbitration and without any waiver or relinquishment of such rights.

Accordingly, the Court rules that Gantshar and Paine Webber's activities—under the circumstances of this case—do not constitute a waiver of their right to claim arbitration and did not prejudice Hurlbut. *But see Singer v. Dean Witter Reynolds Inc.*, 614 F.Supp. 1141 (D.Mass.1985) (where this Court held the defendants' rights to arbitrate were waived when raised two days after the case was set down for trial, nearly a year after the complaint was filed in circumstances of unprotesting compliance with an established discovery schedule and no mention whatsoever of the prospect of arbitration during any pre-trial activity or pleading). As matter of law, the Court rules that defendants Gantshar and Paine Webber have preserved whatever rights they may have to arbitration and have not compromised such rights by "inexcusable and calculated dilatory conduct" as charged.

### The Motion to Compel Arbitration

Gantshar and Paine Webber have moved to compel arbitration. Guided by *Dean Witter Reynolds v. Byrd*, 470 U.S. at 217, 105 S.Ct. at 1240, the Court must address two issues: *viz.*, whether an enforceable arbitration agreement exists; and, if it does, what matters are permissibly included within its sweep.

### I. The Existence of an Enforceable Arbitration Agreement

Gantshar and Paine Webber have produced two Agreements signed by Hurlbut which purport to mandate arbitration. A party may, however, assert general contract defenses to avoid enforcement of an arbitration agreement. *See* 9 U.S.C. § 2; *Southland Corp. v. Keating*, 465 U.S. 1, 11, 104 S.Ct. 852, 858, 79 L.Ed.2d 1 (1984).

Hurlbut attacks the enforceability of the arbitration clauses in two ways. First, she argues that the procedure by which the whole contracts were formed and executed was so flawed as to make the arbitration clauses unenforceable. Second, she argues that the substantive contents of the arbitration clauses are unconscionable and therefore unenforceable. Neither argument is persuasive.

### A. Hurlbut's Claims of Procedural Defects in the Formation of the Contracts and their Impact on the Enforceability of the Arbitration Provisions

In reviewing alleged procedural deficiencies in the formation of the contracts, Hurlbut cites "the 'provisions' text" which it is alleged "consisted of fine print not subject to negotiation." Hurlbut also recites Gantshar's failure to take certain affirmative steps to inform her of the dangers of the contract she was about to sign.

Hurlbut alleges that on the day she came to see Gantshar, he hurriedly ushered her out to lunch while his secretary prepared the required documents for signing. Moreover, Hurlbut describes the luncheon conversation as more social than business, focusing on opera and mutual friends rather than investment counselling. Upon returning to Gantshar's office, Hurlbut signed the agreements. She alleges that Gantshar did not go over the forms, did not ask her to read them, and did not ask if she had questions. He gave her no further oral or written explanation and failed to suggest she consult a lawyer. According to Hurlbut, Gantshar handed her both the Agreements and "told me to sign ... that

that was the agreement." Gantshar disagrees and disputes Hurlbut's recitation of these events.

Hurlbut's attack on the procedure by which the Agreements were "negotiated" and signed is not limited to the arbitration clauses, despite her linguistic attempts to the contrary. The factual matrix which underlies her procedural challenge rests on the totality of the circumstances. Accordingly, the Court holds that Hurlbut fails to distinguish between the circumstances surrounding the formation and execution of the arbitration clause itself and the formation and execution of the documents as a whole.[3]

▇▇▇▇ Had Hurlbut established that her challenge went to the arbitration clause alone, the issue would be one for the Court. 9 U.S.C. § 4; *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404–05, 87 S.Ct. 1801, 1806–07, 18 L.Ed.2d 1270 (1967); *Unionmutual Stock Life Insurance Co. v. Beneficial Life Ins. Co.,* 774 F.2d 524, 528 (1st Cir.1985); *Arent v. Shearson/American Express, Inc.,* 633 F.Supp. 770, 772 (D.Mass.1985). On the other hand, disputes as to the entire document are for the arbitrator. *Prima Paint Corp.,* 388 U.S. at 404–05, 87 S.Ct. at 1806–07. At the same time, in the absence of an actual agreement to arbitrate a particular dispute or class of disputes, the Court cannot compel arbitration. *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960). A court must, therefore, make a preliminary determination of the intent of the parties as evidenced by the words of the arbitration clause. *See Drake Bakeries, Inc. v.*

*Local 50, American Bakery & Confectionery Workers,* 370 U.S. 254, 256, 82 S.Ct. 1346, 1348, 8 L.Ed.2d 474 (1962) (arbitrability a question for the court to be determined by reference to the intent of the parties as reflected in the scope of the arbitration clause); *Matterhorn, Inc. v. NCR Corporation,* 763 F.2d 866, 872 (7th Cir.1985); *cf. Prima Paint,* 388 U.S. at 402 and n. 9, 87 S.Ct. at 1805 and n. 9 (approving a lower court ruling because it "ha[d] been careful to honor evidence that the parties intended to withhold such issues from the arbitrators and reserve them for judicial resolution"). In the instant case then, the Court must initially determine whether the disputed arbitration clauses are broad enough to include challenges to the formation and execution of the two Agreements themselves.

The parties in this case, like those in *Prima Paint,* have agreed to a broad arbitration clause. The Client's Agreement between the parties requires arbitration of controversies "arising out of or relating to this contract or breach thereof." The Option Agreement provides that "any controversy arising out of the handling of any transactions referred to in this Agreement shall be settled by arbitration." In *Prima Paint,* 388 U.S. at 403–404, 87 S.Ct. at 1806, the Supreme Court held that issues relating to the formation of the contract (specifically fraud in the inducement of the contract) must be submitted to arbitration under a broad arbitration clause. In *Unionmutual,* 774 F.2d at 528, the Court of Appeals for the First Circuit ruled that "Beneficial's attempted rescission of the entire agreement falls within the scope of this arbitration clause." Likewise, in *Arent v. Shearson/American Express,* 633

---

**3.** The Court notes that the print type and size of the arbitration clause are identical to the surrounding like paragraphs, all of which are numbered sequentially with equal visual emphasis. It has been persuasively argued that

> arbitration clauses should be prominently and conspicuously displayed in any securities-related agreement so as to inform an investor that disputes will be resolved by this means. Moreover, investors should be required to initial separately the arbitration clause and should be specifically informed that their consent to arbitration is not a condition of engag-

ing in business or trading in securities with the broker or exchange but is desirable for reasons of economy.

> All arbitration clauses should contain prominent language informing customers signing the agreement that they are waiving their right to a trial by jury and to judicial review for errors of fact or law.

N. Brown, G. Shell, & W. Tyson, "Arbitration of Customer–Broker Disputes Arising Under the Federal Securities Laws and RICO," 15 Sec.Reg. L.J. 3, 35 (1987).

F.Supp. 770 (D.Mass.1985), Judge Wolf referred issues concerning the "unconscionability of a contract of adhesion" to arbitration under a similar arbitration clause. *Cf. Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. at 216 n. 2, 105 S.Ct. at 1240 n. 2 (declining to address whether arbitration agreement requires judicial scrutiny as a contract of adhesion or whether it should be routinely enforced).

 The issues raised by Hurlbut concerning the formation of the contracts between the parties are within the scope of their broad arbitration clauses. As such they must be submitted to the arbitrator for resolution. As the First Circuit suggests in *Unionmutual,* the reasons for this result touch upon both law and policy:

> The Supreme Court has recently reaffirmed that " 'questions of arbitrability must be addressed with a healthy regard for the federal policy favoring aribtration.... The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration....' " *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985) (quoting *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24–5, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 [1983] ). In our decision in *Mitsubishi,* we too emphasized that "all doubts are resolved in favor of arbitration; arbitration will be ordered 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' " *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 723 F.2d 155, 159 (1st Cir.1983).

*Unionmutual,* 774 F.2d at 528.

In the present case, the Court cannot say "with positive assurance" that the arbitration clauses of the Agreements are not susceptible of an interpretation that covers the dispute. Indeed, the Court holds that the clauses broadly include such disputes within their terms.

**B. Substantive Attacks on the Enforceability of the Arbitration Provisions of the Contracts**

Hurlbut requests that the court void the arbitration clauses of the contracts because of "substantive unconscionability." As indicia of substantive unconscionability, Hurlbut cites the forced waiver of her right to a jury trial over arbitrable issues and the lack of a reasonable relationship between the arbitration clauses and the "legitimate commercial needs of the dominant contracting party."

*Prima Paint* requires this Court to decide Hurlbut's claims of unconscionability in the arbitration clauses themselves. *Id.* 388 U.S. at 404, 87 S.Ct. at 1806. Hurlbut challenges the agreement to arbitrate by arguing that the waiver of a right to a jury trial over arbitrable issues constitutes "substantive unconscionability" and renders the arbitration provisions unenforceable as matter of law. The Court disagrees.

 Hurlbut cites no case to support the proposition that the waiver of the right to a jury trial over arbitrable issues constitutes substantive unconscionability. Nor can the Court locate such a case. On the other hand, there is ample authority for the proposition that the waiver of the right to a jury trial over arbitrable issues does not render an arbitration clause invalid. *See e.g., Pierson v. Dean, Witter, Reynolds, Inc.,* 742 F.2d 334, 339 (7th Cir.1984) (where the loss of the right to a jury trial was deemed a necessary and fairly obvious consequence of an agreement to arbitrate, the court stated that plaintiffs "cannot use their failure to inquire about the ramifications of that clause to avoid the consequences of agreed-to arbitration"); *Arkoosh v. Dean Witter & Co., Inc.,* 415 F.Supp. 535, 544 (D.Neb.1976) (where plaintiffs specifically claimed that it was unreasonably unfair to them to enforce a waiver of the right to trial by jury in a standard form contract). Unquestionably, the right to trial by jury is an important constitutional right, fundamental to the preservation of our system of individual rights and liberties. But the right, however significant, is not of such a nature that it cannot be

knowingly and intelligently waived in favor of an arbitration process that places either party under an unreasonable burden or gives either party an unreasonable advantage.

■ Hurlbut's claim that the arbitration clause is not reasonably related to the legitimate commercial needs of the dominant contracting party is also without merit. Paine Webber has a legitimate commercial need to expedite the resolution of disputes and to control the costs of that resolution. A policy which centralizes customer disputes by referral to an arbitral rather than a judicial forum serves both these interests[4] and is certainly consonant with the commercial needs of the defendant company.

■ The Court rules that an agreement to arbitrate disputes before an independent, though industry-related, panel of arbitrators of her own choosing, even though imposed by the terms of a standard form contract, is not unconscionable and, therefore, is enforceable under the circumstances of this case. On the record before it, the Court rules that neither arbitration in general nor arbitration as contemplated by the Agreements in question are unconscionable substitutes for trial by jury.

## II. The Issues Which the Arbitration Agreements Cover

### A. Self–Limitation

■ Hurlbut next argues that the arbitration clauses are by their terms self-limiting and fail to embrace issues related to excessive trading. The Court analyzes this argument in two steps asking, first, whether in light of the language used the clauses require arbitration of the issues here raised and, second, if they do, whether such

claims may be permissibly arbitrated as matter of law. By its words, the Client's Agreement includes claims from "all controversies which may arise ... concerning any transaction in any account(s). ..." "Churning" constitutes a transaction, in fact, many transactions allegedly exceeding in their frequency the best interests of the client. As matter of language and intention, then, the Court holds claims of "churning" reasonably within "all controversies" "concerning any transaction."

### B. Claims Susceptible to Arbitration

In *Shearson/American Express, Inc. v. McMahon,* — U.S. ——, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), the Supreme Court ruled that where a valid arbitration agreement exists and applies to the parties' disputes, claims arising under the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.,* and civil claims arising under RICO, 18 U.S.C. § 1964(c) are arbitrable as matter of law.[5] *Shearson* thus disposes of the remaining issues presented herein.

### ORDER

Accordingly, pursuant to 9 U.S.C. § 4, the parties are directed to proceed to arbitration on all Hurlbut's claims and the present action is dismissed.

---

4. The policy may also serve the interests of customers by making it more affordable and expeditious to press claims against Paine Webber.

5. The *Shearson* decision was not foreordained. Some commentators had argued that disputes under the Securities Exchange Act of 1934 ought be held to be non-arbitrable. Note, "Arbitrability of Claims Arising Under the Securities Exchange Act of 1934," Duke Law J. 548 (1986).

Others argued that, while Exchange Act claims ought be held non-arbitrable, RICO claims were subject to arbitration. N. Brown, G. Shell & W. Tyson, "Arbitration of Customer–Broker Disputes Arising under the Federal Securities Laws and RICO," 15 Sec.Reg.L.Jour. 3 (1987). The First Circuit had recently held Exchange Act claims arbitrable and RICO claims non-arbitrable. *Page v. Moseley, Hallgarten, Estabrook & Weeden, Inc.,* 806 F.2d 291 (1st Cir.1986).