**In the Matter of the Complaint of BALLARD SHIPPING COMPANY for Exoneration From or Limitation of Liability.**

**Civ. A. No. 89–0685 L.**

United States District Court,
Rhode Island.

Dec. 7, 1990.

Gordon P. Cleary, Vetter and White, Providence, R.I., Thomas H. Walsh, Jr., John J. Finn, Michael J. Eisele, Bingham Dana & Gould, Boston, Mass., for Ballard Shipping Co.

Richard Corley of Lovett, Schefrin, Gallogly & Hartnett, Providence, R.I., Stephen V. Rible of Bigham, Englar Jones & Houston, New York City, for Americas Ins.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

This matter is before the Court on the motion of Ballard Shipping Company ("Ballard") to compel arbitration and to stay the claim of Americas Insurance Co. ("Americas") pending arbitration. Although the dispute between the parties involves an issue arbitrable under the Federal Arbitration Act, the motion is denied on two grounds. First, this Court concludes Ballard has waived its right to compel arbitration and to stay the claim. Second, compelling arbitration would inappropriately elevate the federal concern for enforcing arbitration provisions over the countervailing federal concern for judicial economy embodied in the Limitation of Liability Act.

## I. BACKGROUND

This dispute arises out of the June 23, 1989 grounding of the M/V WORLD PRODIGY on Brenton Reef off the coast of Newport, Rhode Island. Ballard is the owner of the vessel; Americas is the subrogated underwriter of J. Aron & Company, an affiliate of J. Aron & Company (UK) Ltd.

On May 30, 1989 Ballard and J. Aron & Company (UK) Ltd. entered into a charterparty for a voyage of the vessel from Bourgas, Bulgaria to the United States. On June 8, 1989, the vessel's master issued a bill of lading, which was endorsed for delivery by J. Aron & Company as consignee. The vessel's cargo consisted of 26,045.130 metric tons of gasoil, and the claim of Americas is in the amount of $500,000.00.

After the grounding and resulting oil spill, Ballard issued a letter of undertaking on July 11, 1989 in favor of J. Aron & Company, J. Aron & Company (UK) Ltd., and their underwriters in the amount of $1,700,000.00. In the letter, Ballard agreed to file a general appearance in any action commenced by the cargo owners in this District in exchange for the promise of the cargo interests not to arrest the vessel or seize any property owned by Ballard.

In October of 1989, Americas filed Civil Action 89–0566, an in rem suit against the WORLD PRODIGY in this District. Pursuant to the letter of undertaking, Ballard filed a claim of ownership and an answer. Ballard's answer specifically pled the arbitration clause as an affirmative defense.

On the same day it filed its answer, Ballard initiated the instant suit by filing a verified complaint for exoneration from or limitation of liability under 46 U.S.C. App. sec. 183. This Court subsequently enjoined Americas' suit (C.A. 89–0566) under the authority of Supplemental Admiralty Rule F(3) of the Federal Rules of Civil Procedure.

In its verified complaint Ballard specifically prayed for this Court "to issue a monition against all persons claiming damages" to answer the complaint and make proof of their claims. After this Court entered that order, Americas filed its claim. By its current motion, Ballard now seeks to have this Court stay Americas' claim and to compel arbitration of that claim under the arbitration provision in the charterparty. Ballard brings the motion according to section three of the Federal Arbitration Act.

## II. DISCUSSION

■ The Federal Arbitration Act allows a party to an arbitration clause to stay any action to which it is a party while an arbitrable issue is referred to arbitration. Section three of the Act states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an

agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. The extent of Ballard's liability for the cargo loss is clearly an issue referable to arbitration under the written charterparty agreement executed between Ballard and J. Aron & Co. (UK) Ltd.[1]

### A. Waiver

■ The existence of an issue referable to arbitration does not in every instance require the issue to be referred to arbitration. Arbitration should not be compelled when the party who seeks to compel arbitration has waived that right.[2]

■ However, because arbitration provisions are strongly favored under federal law, "waiver is not to be lightly inferred." *Page v. Moseley, Hallgarten, Estabrook & Weeden, Inc.*, 806 F.2d 291, 293 (1st Cir. 1986) (citation omitted). Courts generally should be wary of "being overready to find a waiver." *Jones Motor Co. v. Chauffeurs, Teamsters and Helpers Local Union No. 633*, 671 F.2d 38, 43 (1st Cir.), *cert. denied*, 459 U.S. 943, 103 S.Ct. 257, 74 L.Ed.2d 200 (1982). Indeed the First Circuit has stated:

In considering the issue of waiver, it is paramount that we keep in mind the Supreme Court's admonition that, due to the strong federal policy favoring arbitration agreements, any doubt concerning arbitrability 'should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'

*Page*, 806 F.2d at 293 (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–942, 74 L.Ed.2d 765 (1983)).

These forewarnings and admonitions properly set the parameters for this Court's analysis of waiver. Extreme care must be used in determining waiver's existence in order to enforce the congressional mandate in the Federal Arbitration Act. However, the doctrine of waiver is not an empty shell. *See Hurlbut v. Gantshar*, 674 F.Supp. 385, 388 (D.Mass.1987) ("Despite policies favoring arbitration ... courts have long held that parties may waive their rights to arbitration and present their dispute to a court.").

In *Jones Motor Co.*, the First Circuit set out the following framework for use in analyzing the issue of waiver:

'In determining whether a party to an arbitration agreement, usually a defendant, has waived its arbitration right, federal courts typically have looked to whether the party has actually participated in the lawsuit or has taken other action inconsistent with his right, ... whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit by the time an intention to arbitrate was communicated by the defendant to the plaintiff, ... whether there has been a long delay in seeking a stay or whether the enforcement of arbitration was

---

**1.** The charterparty agreement executed between Ballard and J. Aron & Company (UK) Ltd. contains the following two clauses: ARBITRATION: Any and all differences and disputes ... arising out of this Charter shall be put to arbitration in the City of [London] ... before a board of three persons, consisting of one to be appointed by the Owner, one by the Charterer, and one by the two so chosen.
  Cargo Arbitration Clause:
  All claims arising under Bill of Lading contracts by affiliates of Charterer for non-delivery or damage to cargo carried pursuant to this Charter Party shall be subject to arbitration in accordance with the terms of the arbi-

tration clause of this Charter Party, and affiliates having authorised Charterer to so agree on their behalf(s), the affiliate(s) to be substituted for Charterer in the terms of the arbitration clause and at the arbitration proceeding.

**2.** Although section three of the Arbitration Act uses the term "default" almost all of the reported cases on the subject employ the term "waiver." *See generally* 3 Fed.Proc., L.Ed. *Arbitration* § 4:24 (1981) (stating that the term "'default' has been construed as analogous in meaning to the common-law term 'waiver'"). For consistency's sake, "waiver" is used here.

brought up when trial was near at hand....

Other relevant factors are whether the defendants have invoked the jurisdiction of the court by filing a counterclaim without asking for a stay of the proceedings, ... whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration ...] had taken place, ... and whether the other party was affected, misled, or prejudiced by the delay....'

*Jones Motor Co.*, 671 F.2d at 44 (bracketed text in original) (quoting *Reid Burton Constr., Inc. v. Carpenters Dist. Council*, 614 F.2d 698, 702 (10th Cir.), *cert. denied*, 449 U.S. 824, 101 S.Ct. 85, 66 L.Ed.2d 27 (1980)).

■ Applying these considerations to the facts in this case, it is apparent to this Court that Ballard has waived its right to compel arbitration, even in light of the strong policy favoring arbitration. First, Ballard's initiation of and participation in this suit are actions inconsistent with the right to compel arbitration. Second, the litigation machinery has been substantially invoked because of Ballard's actions. Third, Ballard has procrastinated to some degree in making this motion. Fourth, by filing this action, Ballard invoked the jurisdiction of this Court. Fifth, the filings of the claimants and the possibility of utilizing discovery procedures constitute intervening steps otherwise unavailable to Ballard. Finally, Americas has been prejudiced as a result of Ballard's delay and inconsistent action.

By filing the complaint for limitation of or exoneration from liability, Ballard became the plaintiff in this suit. Thus Ballard has done a great deal more than actually participate in this suit; Ballard actually initiated the case. This activity indicates the existence of waiver under the first and fourth considerations of *Jones Motor Co.*

In most waiver cases it is the defendant, unwittingly haled before a court, who moves to compel arbitration. It is the plaintiff who then alleges that the defendant has waived its right to compel arbitration. Several decisions have found a defendant's litigating activity to constitute waiver. *See e.g. Caribbean Ins. Servs., Inc. v. American Bankers Life Assurance Co.*, 715 F.2d 17, 20 (1st Cir.1983) ("[A] party's willingness to submit a dispute to trial on the merits may imply a waiver of the right to arbitration.").

■ In most cases a plaintiff's mere filing of a complaint does not constitute waiver. However, a party's initiation of a suit is certainly a relevant factor in analyzing whether it has waived its right to compel arbitration. *See Hilti, Inc. v. Oldach*, 392 F.2d 368, 372 n. 9 (1st Cir.1968). In some cases, a plaintiff's initiation of a suit has been considered a determinative factor in a waiver analysis. *See Gutor Int'l AG v. Raymond Packer Co.*, 493 F.2d 938, 945 (1st Cir.1974) (holding that plaintiff "having submitted unconditionally to the United States courts its claim for payment for machines sold to [defendant] under arrangements then in force between the two, may not now take advantage of the arbitration clause"). *See also The Belize*, 25 F.Supp. 663, 664 (S.D.N.Y.1938) ("After issue had been joined on the merits in the admiralty court, it was too late for the libellant to draw back and compel arbitration."), *appeal dismissed*, 101 F.2d 1005 (2d Cir.1939).

Besides invoking this Court's jurisdiction, Ballard's initiation of this limitation action is an action inconsistent with its right to compel arbitration. This conclusion rests on the very essence of the limitation action as well as the particular facts in this case.

The nature of a limitation proceeding in admiralty has long been recognized. As Augustus Hand wrote, "The purpose of a limitation proceeding is not merely to limit liability but to bring *all* claims into concourse and settle *every* dispute in *one* action." *The Quarrington Court*, 102 F.2d 916, 918 (2d Cir.) (emphasis added), *cert. denied*, 307 U.S. 645, 59 S.Ct. 1043, 83 L.Ed. 1525 (1939). Ballard's current motion is antithetical to the very nature of the limitation proceeding, which it itself initiated. Compelling arbitration in this instance would sever the large cargo claim from the limitation proceeding and force

that dispute to be settled by arbitrators in London. A party who files a limitation proceeding seeks to prevent different claims from being resolved in different actions. Allowing that party to later insist that certain claims be resolved in different actions is repugnant to the very purpose of the limitation proceeding.

In addition to the nature of this suit, the particular proceedings in this case suggest Ballard has waived its right to compel arbitration. When Ballard filed this action, it specifically prayed that this Court "issue a monition against all persons claiming damages for any loss, damage or injury" sustained as a result of the M/V WORLD PRODIGY's grounding. In addition, Ballard prayed that all claimants be made to answer the complaint and make proof of their claims. Accordingly, this Court issued an order on January 9, 1990 directing that a notice be issued to direct *all* claimants to file their claim. The order also required that the public be given notice by publication and mandated that Ballard provide direct notification to *all* known claimants, which would include Americas. The notice itself stated:

> Notice is given that Ballard Shipping Co., as owner of the M/V WORLD PRODIGY, has filed a Complaint … claiming the right to exoneration from or limitation of liability of *all* claims occasioned or incurred by or resulting from the grounding of the M/V WORLD PRODIGY …
>
> *All* persons or parties having such claims must file them … on or before March 9, 1990, or be defaulted.

(emphasis added). Ballard first raised the arbitration issue in this case by filing the current motion on August 8, 1990. Ballard has failed to initiate arbitration proceedings and has never attempted to exempt Americas in some manner from complying with the limitation proceeding. Ballard's initiation of and participation in this suit constitute activity inconsistent with its right to now compel arbitration.

In response to the notice, over five hundred claimants, including Americas, filed their claims. The second consideration under *Jones Motor Co.* requires the Court to determine whether the litigation machinery has been substantially invoked. Clearly, this Court's order and notice, the submission of the claimants and the advanced procedural posture of this litigation compels the conclusion that it has.

The third relevant factor under *Jones Motor Co.* considers the timing of the motion to compel arbitration. Ballard argues that its earlier effort to raise the arbitration issue must be considered. Specifically, it points to its answer in the enjoined action which raised the affirmative defense of arbitration. The procedural posture of the parties in the enjoined action is irrelevant to the current consideration of waiver. Even if Ballard sufficiently raised the arbitration issue at that time, its contemporaneous filing of this action has resulted in the waiver of the right to compel arbitration.

In addition, the filings of the claimants have enabled Ballard to know exactly the potential liability it faces. This factor, along with the availability of discovery, constitute sufficient intervening steps under *Jones Motor Co.*

The final consideration in the *Jones Motor Co.* analysis of waiver is whether "the other party was affected, misled or prejudiced by the delay." 671 F.2d at 44. Other First Circuit decisions have spoken only in terms of a requirement that the opposing party make out a showing of prejudice. *See Sevinor v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 807 F.2d 16, 19 (1st Cir.1986); *J & S Constr. Co. v. Travelers Indem. Co.,* 520 F.2d 809, 809–10 (1st Cir. 1975); *Dickstein v. Dupont,* 443 F.2d 783, 785 (1st Cir.1971).

In light of the strong federal policy favoring arbitration, this Court deems it prudent to analyze whether Americas has been prejudiced by Ballard's delay. A finding that Americas was affected or misled would not adequately address the federal concern.

Americas argues that if arbitration is compelled, Ballard will be able to allege that Americas' claim is barred by laches in that arbitration was not commenced within

one year of the grounding. The issue of laches is itself arbitrable under the pertinent arbitration provisions. *International Union of Operating Eng'rs, Local 150 v. Flair Builders, Inc.*, 406 U.S. 487, 490–91, 92 S.Ct. 1710, 1712–13, 32 L.Ed.2d 248 (1972). However, Americas is not attempting to have this Court decide whether laches would bar its claim against Ballard in an arbitration in London. Rather, Americas is arguing that Ballard, by filing and prosecuting this limitation proceeding, and then waiting for approximately seven and one half months to file the instant motion, has prejudiced Americas by placing the parties in a legal position drastically different than the one it faced when this action was filed.

This Court is satisfied that Ballard's delay has prejudiced Americas. In passing on the issue of prejudice it is appropriate to consider whether the legal position of the party opposing arbitration has been damaged. *See Stone v. E.F. Hutton & Co.*, 898 F.2d 1542, 1543 (11th Cir.1990). Americas position has been prejudiced because it may now confront a laches defense to its claim.

In *Sweater Bee by Banff, Ltd. v. Manhattan Industries, Inc.*, 754 F.2d 457 (2d Cir.), *cert. denied*, 474 U.S. 819, 106 S.Ct. 68, 88 L.Ed.2d 55 (1985) the Second Circuit relied on an analysis of the changed circumstances between the parties in order to determine if the party opposing arbitration had been prejudiced. In holding that no prejudice existed, the Court stated, plaintiff "is no worse off proceeding now to arbitration than had [defendant] moved for arbitration immediately after being served with the amended complaint." 754 F.2d at 466. Here, Americas would be substantially worse off in an arbitration proceeding because Ballard's own procedural maneuverings have enabled it to raise the defense of laches. Ballard's actions have not resulted in mere delay. The resulting delay has significantly changed the legal position of the parties to the prejudice of Americas.

### B. Contrary Congressional Commands

By initiating and prosecuting this action Ballard has waived its right to compel arbi-

tration. Upon this ground alone Ballard's motion must be denied. One other independent ground exists for denying Ballard's motions to stay Americas' claim and compel arbitration. This ground is judicial economy.

■ In passing on this factor, this Court is well aware of the general rule that it "may not refuse to grant a stay [of a claim pending arbitration] based on considerations of judicial economy." *Seguros Banvenez, S.A. v. S/S Oliver Drescher*, 761 F.2d 855, 862 (2d Cir.1985).

The First Circuit has twice rejected arguments that judicial economy demanded that a motion to compel arbitration be denied. In *Hilti, Inc. v. Oldach*, it held that an arbitration defense could not be vitiated merely because one of the defendants was not a party to the arbitration agreement. The Court wrote, "If arbitration defenses could be foreclosed simply by adding as a defendant a person not a party to an arbitration agreement, the utility of such agreements would be seriously compromised." *Hilti*, 392 F.2d at 369 n. 2. In *Acevedo Maldonado v. PPG Industries, Inc.*, 514 F.2d 614 (1st Cir.1975), the Court held that public policy would not be violated by compelling the third party claim to go to arbitration even though the original action would proceed independently through the courts. The Court held: "If a claim of right to arbitration could be foreclosed whenever a dispute between the parties to the contract derives from another person's claim against one of the parties, the utility of broad arbitration agreements would be undermined." *Id.* at 617.

The judicial economy achieved here by the denial of Ballard's motion does not promote any of the undesirable consequences feared in either *Hilti* or *PPG Industries, Inc.* In *Hilti* the First Circuit was concerned with procedural gamesmanship; it sought to prevent a party from utilizing the joinder rules in order to make an end run around the public policy of arbitration. This concern is irrelevant in proceedings like the one under consideration here. Americas, the party opposing arbitration, is powerless to force any other claimant be-

sides itself to file a claim. Unlike a plaintiff who can join a defendant, the best Americas can do is to encourage others to become claimants. This, incidentally, is a positive effect because it may prevent potential claimants from facing a default judgement.

Furthermore, the First Circuit's concern in *PPG Industries, Inc.* is inapplicable here because neither Ballard's nor Americas' rights are derived from any other person's claim against either party.

Although the harmful consequences both *Hilti* and *PPG Industries, Inc.* foresaw are absent here, the First Circuit's willingness to tolerate judicial inefficiency while promoting arbitration must be noted. The Arbitration Act condones judicial inefficiency in order to achieve its statutory objective. To deny arbitration in this case is obviously efficient. This action will now proceed in uniform fashion without piecemeal resolution occurring on a different continent, the mechanics of which this Court cannot control. Nevertheless, such considerations are normally irrelevant because they "frustrate the strong federal policy in favor of arbitration which is expressed in the Federal Arbitration Act as interpreted by the Supreme Court." *C. Itoh & Co. (America) Inc. v. Jordan Int'l Co.*, 552 F.2d 1228, 1231 (7th Cir.1977).

This Court's concern for judicial economy in this case is not grounded solely on its discretionary supervisory role over the litigation. Rather this concern emanates directly from the congressional concern for judicial economy embedded in the limitation statute and procedure. Judicial economy is mandated in the limitation proceeding by the requirement that all claims be brought into concourse in one action. Achieving judicial economy in this case is not just a good idea; it is the law. The Court would be remiss to pay homage to the federal policy favoring arbitration while ignoring the federal policy favoring consolidation of liability limitation in admiralty cases.

Indeed section two of the Arbitration Act precludes enforcement of an arbitration provision upon any grounds "as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has said such grounds exist where "a waiver of judicial remedies inherently conflicts with the underlying purposes of [a separate] statute." *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, ——, 109 S.Ct. 1917, 1921, 104 L.Ed.2d 526 (1989). *See also Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987) ("Like any statutory directive, the Arbitration Act's mandate may be overridden by a contrary congressional command."); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (stating that arbitration agreements should be rigorously enforced "at least absent a countervailing policy manifested in another federal statute").

The only congressional concern the Supreme Court has found inconsistent with the Arbitration Act is lodged in the statutory language of section 12(2) of the Securities Act of 1933. 15 U.S.C. § 77*l*(2). In *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), the Court held that a predispute agreement to arbitrate claims arising under section 12(2) was unenforceable because it constituted a "stipulation" waiving compliance with a "provision" of the Securities Act and was therefor unenforceable under section 14. *Wilko* was explicitly overruled by the Supreme Court in *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989). *See generally Vincent R. Iacono, M.D., Inc. v. Drexel Burnham Lambert, Inc.*, 715 F.Supp. 18, 21 (D.R.I.1989) (discussing the history of the judicial treatment of pre-dispute arbitration clauses concerning suits arising under the 1933 and 1934 Securities Acts). Despite *Wilko*'s demise, the Court has continued to point to section two of the Arbitration Act for the proposition that arbitration agreements are not per se infallible.

In *McMahon*, the Supreme Court provided the following guidance for determining the existence of a countervailing federal policy: "If Congress did intend to limit or prohibit waiver of a judicial forum for a

particular claim, such an intent 'will be deducible from [the statute's] text or legislative history,' or from an inherent conflict between arbitration and the statute's underlying purposes." 482 U.S. at 227, 107 S.Ct. at 2338 (citations omitted) (bracketed text in original).

As discussed earlier, one of the critical underlying purposes of the limitation action[3] is to achieve a *"complete* and just disposition of a many-cornered controversy." *Hartford Accident & Indem. Co. v. Southern Pac. Co.,* 273 U.S. 207, 216, 47 S.Ct. 357, 359, 71 L.Ed. 612 (1927) (emphasis added). As such, the limitation proceeding furthers the goal of "uniformity which has been declared a dominant requirement for admiralty law." *Flink v. Paladini,* 279 U.S. 59, 63, 49 S.Ct. 255, 255, 73 L.Ed. 613 (1929). In *Maryland Casualty Co. v. Cushing,* 347 U.S. 409, 74 S.Ct. 608, 98 L.Ed. 806 (1954), Justice Frankfurter reiterated the importance of this aspect of a limitation proceeding. In announcing the judgement of the Court in an opinion joined by three other members, he said the following:

> The heart of [the limitation] system is a concursus of all claims to ensure the prompt and economical disposition of controversies in which there are often a multitude of claimants.... Moreover, it is important to bear in mind that the concursus is not solely for the benefit of the shipowner. The elaborate notice provisions of the Admiralty Rules are designed to protect injured claimants.

*Id.* at 415, 417, 74 S.Ct. at 611, 612. Three years after *Cushing,* the Supreme Court decided *Lake Tankers Corp. v. Hehn,* 354 U.S. 945, 77 S.Ct. 1421, 1 L.Ed.2d 1543 (1957). In *Lake Tankers Corp.* the Court held that "where the value of the vessel and the pending freight, the fund paid into the proceeding by the offending owner, exceeds the claims made against it, there is no necessity for the maintenance of the concourse." *Id.* at 152, 77 S.Ct. at 1272. In this case, Ballard has provided the Court with surety in the amount of $14,977,-956.00. This amount appears sufficient to cover all the claims, however, whether it indeed will be adequate is uncertain. For example, among the more than five hundred claims are those of the United States and Rhode Island seeking relief for cleanup costs and environmental damages. The full extent of those claims is unknown. Presumably, Ballard's fear of the amount of its potential liability caused it to file this action. Because the full extent of that liability is undetermined, the concourse should be maintained.

The limitation action achieves uniformity by requiring other suits against the owner to be enjoined. In this case, the Court not only enjoined CA 89–0566, the suit filed by Americas, it also enjoined several actions brought by a variety of plaintiffs, including shellfishermen, other commercial fishermen and dealers. In addition, in its Order of January 9, 1990, the Court prohibited the initiation of any new action against Ballard and/or the M/V WORLD PRODIGY. The limitation statute provides the Court with this power in order to assure that all claims will be heard in a single action. The Supreme Court has said, "The very nature of the proceeding is such that it must be exclusive of any other separate

---

**3.** The limitation proceeding, of course, has other purposes. The original impetus for limitation was to encourage investments in the shipping industry. *See generally* H. Grotius, *De Jure Belli ac Pacis* 139 (Campbell trans. 1901) ("[M]en would be deterred from employing ships, if they lay under the perpetual fear of being answerable for the acts of their masters to an unlimited extent."). Justice Black questioned the continued vitality of this basis for limitation in his dissenting opinion in *Maryland Casualty Co. v. Cushing,* 347 U.S. 409, 74 S.Ct. 608, 98 L.Ed. 806 (1954). He wrote, "Many of the conditions in the shipping industry which induced the 1851 Congress to pass the Limita-

tion of Liability Act no longer prevail. And later Congresses, when they wished to aid shipping, provided subsidies paid out of the public treasury rather than subsidies paid by injured persons." *Id.* at 437, 74 S.Ct. at 623.

Despite a wave of criticism, *see generally* G. Grant & C. Black, Jr., *The Law of Admiralty* § 10–4 n. 13d (2d ed. 1975), the limitation proceeding has not been washed away. Indeed, recent commentators have emphasized the critical role the proceeding plays in making possible "realistic insurance coverage and reasonable apportionment of the costs of a maritime disaster." J. Schoembaum, *Admiralty & Maritime Law* § 14–1 (1987).

**554**

suit against an owner on account of the ship." *Metropolitan Redwood Lumber Co. v. Doe,* 223 U.S. 365, 371, 32 S.Ct. 275, 275, 56 L.Ed. 473 (1912). The limitation action also encourages uniformity by subjecting any claimant to a default judgment upon failure to file a claim within the prescribed time in the action.

In this case, plaintiff Ballard initiated this limitation action. Now it seeks to stay Americas' claim and force that claim to arbitration. This Court is unwilling to disregard the congressional concern for judicial economy embedded in the limitation act by acceding to Ballard's request for arbitration.

## III. CONCLUSION

The motion of Ballard to stay the claim of Americas and compel arbitration is denied. Ballard has waived its right to compel arbitration by engaging in activity inconsistent with its right and by delaying its request, both to the prejudice of Americas. In addition, compelling arbitration in this case would frustrate the congressional concern for uniformity and judicial economy firmly rooted in the limitation action.

*It is so Ordered.*